FRANCHISE TAX BOARD OF CALIFORNIA *v.* CON-
STRUCTION LABORERS VACATION TRUST
FOR SOUTHERN CALIFORNIA ET AL.

No. 82–695.   Argued April 19, 1983—Decided June 24, 1983

1

*Patti S. Kitching*, Deputy Attorney General of California, argued the cause for appellant. With her on the briefs were *John K. Van De Kamp*, Attorney General, and *Edmond B. Mamer*, Deputy Attorney General.

*James P. Watson* argued the cause for appellees. With him on the brief were *George M. Cox* and *John S. Miller, Jr.**

JUSTICE BRENNAN delivered the opinion of the Court.

The principal question in dispute between the parties is whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U. S. C. § 1001 *et seq.* (1976 ed. and Supp. V), permits state tax authorities

---

**William D. Dexter* filed a brief for the Multistate Tax Commission as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General Lee, Stuart A. Smith, T. Timothy Ryan, Jr., Karen I. Ward,* and *Allen H. Feldman* for the United States; by *J. Albert Woll, Laurence Gold,* and *George Kaufmann* for the American Federation of Labor and Congress of Industrial Organizations; by *Thomas E. Stanton, Jr.,* and *Victor J. Van Bourg* for the Boards of Trustees of the Carpenters Vacation and Holiday Trust Fund for Northern California et al.; and by *Eugene B. Granof* and *George J. Pantos* for the ERISA Industry Committee (ERIC).

*Joseph I. Lieberman,* Attorney General, *Christina G. Dunnell,* Assistant Attorney General, and *Ann Thacher Anderson* filed a brief for the State of Connecticut et al. as *amici curiae.*

4

to collect unpaid state income taxes by levying on funds held in trust for the taxpayers under an ERISA-covered vacation benefit plan. The issue is an important one, which affects thousands of federally regulated trusts and all nonfederal tax collection systems, and it must eventually receive a definitive, uniform resolution. Nevertheless, for reasons involving perhaps more history than logic, we hold that the lower federal courts had no jurisdiction to decide the question in the case before us, and we vacate the judgment and remand the case with instructions to remand it to the state court from which it was removed.

I

None of the relevant facts is in dispute. Appellee Construction Laborers Vacation Trust for Southern California (CLVT)[1] is a trust established by an agreement between four associations of employers active in the construction industry in southern California and the Southern California District Council of Laborers, an arm of the District Council and affiliated locals of the Laborers' International Union of North America. The purpose of the agreement and trust was to establish a mechanism for administering the provisions of a collective-bargaining agreement that grants construction workers a yearly paid vacation.[2] The trust agreement expressly proscribes any assignment, pledge, or encumbrance of

---

[1] Along with CLVT itself, CLVT's individual trustees are also appellees. At various points throughout this opinion, the trust and its trustees are referred to collectively as "CLVT."

[2] As part of the hourly compensation due bargaining unit members, employers pay a certain amount to CLVT, which places the money in an account for each employee. Once a year, CLVT distributes the money in each account to the employee for whom it is kept, provided the employee complies with CLVT's application procedures. Any funds held for employees who fail to make a timely application are used to defray CLVT's administrative expenses. See generally Trust Agreement, Art. IX, App. 45–51 ("The Plan"). This system was set up in large part because union members typically work for several employers during the course of a year.

funds held in trust by CLVT.[3] The Plan that CLVT administers is unquestionably an "employee welfare benefit plan" within the meaning of §3 of ERISA, 29 U. S. C. §1002(1), and CLVT and its individual trustees are thereby subject to extensive regulation under Titles I and III of ERISA.

Appellant Franchise Tax Board is a California agency charged with enforcement of that State's personal income tax law. California law authorizes appellant to require any person in possession of "credits or other personal property or other things of value, belonging to a taxpayer" "to withhold . . . the amount of any tax, interest, or penalties due from the taxpayer . . . and to transmit the amount withheld to the Franchise Tax Board." Cal. Rev. & Tax. Code Ann. §18817 (West Supp. 1983). Any person who, upon notice by the Franchise Tax Board, fails to comply with its request to withhold and to transmit funds becomes personally liable for the amounts identified in the notice. §18818.

In June 1980, the Franchise Tax Board filed a complaint in state court against CLVT and its trustees. Under the heading "First Cause of Action," appellant alleged that CLVT had failed to comply with three levies issued under §18817,[4] con-

---

[3] Article IX, ¶9.08, provides in part:

"[N]o payments due the Fund and no monies in vacation accounts established pursuant to the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, encumbrance or charge by any employee or any other persons and any such anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge shall be void and ineffective. The money credited to a vacation account shall be subject to withdrawal and distribution only at the times, in the manner and for the purposes specified in this Agreement." *Id.*, at 49.

Section 404(a)(1) of ERISA, 29 U. S. C. §1104(a)(1) (1976 ed. and Supp. V), requires plan trustees to discharge their duties "solely in the interest of the participants and beneficiaries," "for the exclusive purpose of . . . providing benefits . . . and . . . defraying reasonable expenses of administering the plan," and "in accordance with the documents and instruments governing the plan" insofar as they are consistent with ERISA. §§1104(a)(1)(A), (D).

[4] At several points in 1977 and 1978, appellant issued notices to CLVT requesting it to withhold and to transmit approximately $380 in unpaid

cluding with the allegation that it had been "damaged in a sum . . . not to exceed $380.56 plus interest from June 1, 1980." App. 3–8. Under the heading "Second Cause of Action," appellant incorporated its previous allegations and added:

> "There was at the time of the levies alleged above and continues to be an actual controversy between the parties concerning their respective legal rights and duties. The Board [appellant] contends that defendants [CLVT] are obligated and required by law to pay over to the Board all amounts held . . . in favor of the Board's delinquent taxpayers. On the other hand, defendants contend that section 514 of ERISA preempts state law and that the trustees lack the power to honor the levies made upon them by the State of California.

---

taxes, interest, and penalties due from three individuals. CLVT did not dispute that the individuals in question were beneficiaries of its trust or that it was then holding vacation benefit funds for them. In each case, however, it acknowledged receipt of appellant's notice and informed appellant that it had requested an opinion letter from the Administrator for Pension and Welfare Benefit Programs of the United States Department of Labor as to whether it was permitted under ERISA to honor appellant's levy. CLVT also informed appellant that it would withhold the funds from the individual workers until it received an opinion from the Department of Labor, but that it would not transmit the funds to the Franchise Tax Board.

Appellant took no immediate action to enforce its levy, and in January 1980 CLVT finally received the opinion letter it had requested. The opinion letter concluded: "[I]t is the position of the Department of Labor that the process of any state judicial or administrative agency seeking to levy for unpaid taxes or unpaid unemployment insurance contributions upon benefits due a participant or beneficiary under the Plan is pre-empted under ERISA section 514 [29 U. S. C. § 1144]." App. 71. Accordingly, on January 7, 1980, counsel for CLVT furnished appellant a copy of the opinion letter, informed appellant that CLVT lacked the power to honor appellant's levies, and stated their intention to recommend that CLVT should disburse the funds it had withheld to the employees in question.

"[D]efendants will continue to refuse to honor the Board's levies in this regard. Accordingly, a declaration by this court of the parties' respective rights is required to fully and finally resolve this controversy." *Id.*, at 8–9.

In a prayer for relief, appellant requested damages for defendants' failure to honor the levies and a declaration that defendants are "legally obligated to honor all future levies by the Board." *Id.*, at 9.[5]

CLVT removed the case to the United States District Court for the Central District of California, and the court denied the Franchise Tax Board's motion for remand to the state court. On the merits, the District Court ruled that ERISA did not pre-empt the State's power to levy on funds held in trust by CLVT. CLVT appealed, and the Court of Appeals reversed. 679 F. 2d 1307 (CA9 1982). On petition for rehearing, the Franchise Tax Board renewed its argument that the District Court lacked jurisdiction over the complaint in this case. The petition for rehearing was denied, and an appeal was taken to this Court. We postponed consideration of our jurisdiction pending argument on the merits. 459 U. S. 1085 (1982). We now hold that this case was not within the removal jurisdiction conferred by 28 U. S. C. § 1441, and therefore we do not reach the merits of the pre-emption question.[6]

## II

The jurisdictional structure at issue in this case has remained basically unchanged for the past century. With exceptions not relevant here, "any civil action brought in a

---

[5] The complaint does not identify statutory authority for the relief requested; indeed, the only statute mentioned on the face of the complaint is ERISA. See *infra,* at 13.

[6] At least for purposes of determining whether the courts below had jurisdiction over this case, we have appellate jurisdiction under 28 U. S. C. § 1254(2).

State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Ibid.* If it appears before final judgment that a case was not properly removed, because it was not within the original jurisdiction of the United States district courts, the district court must remand it to the state court from which it was removed. See 28 U. S. C. § 1447(c). For this case—as for many cases where there is no diversity of citizenship between the parties—the propriety of removal turns on whether the case falls within the original "federal question" jurisdiction of the United States district courts: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U. S. C. § 1331 (1976 ed., Supp. V).[7]

Since the first version of § 1331 was enacted, Act of Mar. 3, 1875, ch. 137, § 1, 18 Stat. 470, the statutory phrase "arising under the Constitution, laws, or treaties of the United States" has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts. Especially when considered in light of § 1441's removal jurisdiction, the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.[8]

The most familiar definition of the statutory "arising under" limitation is Justice Holmes' statement, "A suit arises

---

[7] ERISA may also be an "Act of Congress regulating commerce" within the meaning of 28 U. S. C. § 1337 (1976 ed., Supp. V), but we have not distinguished between the "arising under" standards of § 1337 and § 1331. See, *e. g.*, *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667 (1950).

[8] The statute's "arising under" language tracks similar language in Art. III, § 2, of the Constitution, which has been construed as permitting Congress to extend federal jurisdiction to any case of which federal law potentially "forms an ingredient," see *Osborn* v. *Bank of United States*, 9 Wheat. 738, 823 (1824), and its limited legislative history suggests that the

under the law that creates the cause of action." *American Well Works Co.* v. *Layne & Bowler Co.*, 241 U. S. 257, 260 (1916). However, it is well settled that Justice Holmes' test is more useful for describing the vast majority of cases that come within the district courts' original jurisdiction than it is for describing which cases are beyond district court jurisdiction. We have often held that a case "arose under" federal law where the vindication of a right under state law necessarily turned on some construction of federal law, see, *e. g.*, *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180 (1921); *Hopkins* v. *Walker*, 244 U. S. 486 (1917), and even the most ardent proponent of the Holmes test has admitted that it has been rejected as an exclusionary principle, see *Flournoy* v. *Wiener*, 321 U. S. 253, 270–272 (1944) (Frankfurter, J., dissenting). See also *T. B. Harms Co.* v. *Eliscu*, 339 F. 2d 823, 827 (CA2 1964) (Friendly, J.). Leading commentators have suggested that for purposes of § 1331 an action "arises under" federal law "if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law." P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 889 (2d ed. 1973) (hereinafter Hart & Wechsler); cf. *T. B. Harms Co.*, *supra*, at 827 ("a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law").

One powerful doctrine has emerged, however—the "well-pleaded complaint" rule—which as a practical matter severely limits the number of cases in which state law "creates the cause of action" that may be initiated in or removed to

---

44th Congress may have meant to "confer the whole power which the Constitution conferred," 2 Cong. Rec. 4986 (1874) (remarks of Sen. Carpenter). Nevertheless, we have only recently reaffirmed what has long been recognized—that "Art. III 'arising under' jurisdiction is broader than federal-question jurisdiction under § 1331." *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480, 495 (1983).

federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts.

> "[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Taylor* v. *Anderson*, 234 U. S. 74, 75–76 (1914).

Thus, a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, *Taylor* v. *Anderson, supra; Louisville & Nashville R. Co.* v. *Mottley*, 211 U. S. 149 (1908), or that a federal defense the defendant may raise is not sufficient to defeat the claim, *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454 (1894). "Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." *Louisville & Nashville R. Co.* v. *Mottley, supra*, at 152. For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case "arises under" federal law.[9] "[A] right or immunity created by the

---

[9] The well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction. See *Phillips Petroleum Co.* v. *Texaco Inc.*, 415 U. S. 125, 127 (1974) *(per curiam)* (case brought originally in federal court); *Pan American Petroleum Corp.* v. *Superior Court*, 366 U. S. 656, 663 (1961) (attack on jurisdiction of state court).

It is possible to conceive of a rational jurisdictional system in which the answer as well as the complaint would be consulted before a determination was made whether the case "arose under" federal law, or in which original and removal jurisdiction were not coextensive. Indeed, until the 1887

Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully* v. *First National Bank in Meridian*, 299 U. S. 109, 112 (1936).

For many cases in which federal law becomes relevant only insofar as it sets bounds for the operation of state authority, the well-pleaded complaint rule makes sense as a quick rule of thumb. Describing the case before the Court in *Gully*,[10] Justice Cardozo wrote:

> "Petitioner will have to prove that the state law has been obeyed before the question will be reached whether anything in its provisions or in administrative conduct under it is inconsistent with the federal rule. If what was done by the taxing officers in levying the tax in suit did not amount in substance under the law of Mississippi to an assessment of the shareholders, but in substance as

amendments to the 1875 Act, Act of Mar. 3, 1887, ch. 373, 24 Stat. 552, as amended by Act of Aug. 13, 1888, ch. 866, 25 Stat. 433, the well-pleaded complaint rule was not applied in full force to cases removed from state court; the defendant's petition for removal could furnish the necessary guarantee that the case necessarily presented a substantial question of federal law. See *Railroad Co.* v. *Mississippi*, 102 U. S. 135, 140 (1880); *Gold-Washing & Water Co.* v. *Keyes*, 96 U. S. 199, 203–204 (1878). Commentators have repeatedly proposed that some mechanism be established to permit removal of cases in which a federal defense may be dispositive. See, *e. g.*, American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1312, pp. 188–194 (1969) (ALI Study); Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 233–234 (1948). But those proposals have not been adopted.

[10] *Gully* was a suit by Mississippi tax authorities, claiming that the First National Bank had failed to make good on a contract with its predecessor corporation whereby, according to the State, the bank had promised to pay the predecessor's tax liabilities. 299 U. S., at 111–112. It had been removed to federal court, and the motion for remand had been defeated, on the ground that the State's "power to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute" and that "by necessary implication a plaintiff counts upon the statute in suing for the tax." *Id.*, at 112.

well as in form was an assessment of the bank alone, the conclusion will be inescapable that there was neither tax nor debt, apart from any barriers Congress may have built. On the other hand, a finding upon evidence that the Mississippi law has been obeyed may compose the controversy altogether, leaving no room for a contention that the federal law has been infringed. The most that one can say is that a question of federal law is lurking in the background, just as farther in the background there lurks a question of constitutional law, the question of state power in our federal form of government. A dispute so doubtful and conjectural, so far removed from plain necessity, is unavailing to extinguish the jurisdiction of the states." *Id.*, at 117.

The rule, however, may produce awkward results, especially in cases in which neither the obligation created by state law nor the defendant's factual failure to comply are in dispute, and both parties admit that the only question for decision is raised by a federal pre-emption defense. Nevertheless, it has been correctly understood to apply in such situations.[11] As we said in *Gully:* "By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby." *Id.*, at 116.[12]

---

[11] *E. g., Trent Realty Associates* v. *First Federal Savings & Loan Assn.*, 657 F. 2d 29, 34–35 (CA3 1981); *First National Bank of Aberdeen* v. *Aberdeen National Bank*, 627 F. 2d 843, 850–852 (CA8 1980); *Washington* v. *American League of Professional Baseball Clubs*, 460 F. 2d 654, 660 (CA9 1972); cf. *First Federal Savings & Loan Assn. of Boston* v. *Greenwald*, 591 F. 2d 417, 422–423 (CA1 1979).

[12] Note, however, that a claim of federal pre-emption does not always arise as a defense to a coercive action. See n. 20, *infra.* And, of course, the absence of original jurisdiction does not mean that there is no federal forum in which a pre-emption defense may be heard. If the state courts reject a claim of federal pre-emption, that decision may ultimately be reviewed on appeal by this Court. See, *e. g., Fidelity Federal Savings & Loan Assn.* v. *De la Cuesta*, 458 U. S. 141 (1982) (deciding pre-emption question at issue in *Trent Realty, supra*).

## III

Simply to state these principles is not to apply them to the case at hand. Appellant's complaint sets forth two "causes of action," one of which expressly refers to ERISA; if either comes within the original jurisdiction of the federal courts, removal was proper as to the whole case. See 28 U. S. C. § 1441(c). Although appellant's complaint does not specifically assert any particular statutory entitlement for the relief it seeks, the language of the complaint suggests (and the parties do not dispute) that appellant's "first cause of action" states a claim under Cal. Rev. & Tax. Code Ann. § 18818 (West Supp. 1983), see *supra*, at 5–6, and its "second cause of action" states a claim under California's Declaratory Judgment Act, Cal. Civ. Proc. Code Ann. § 1060 (West 1980). As an initial proposition, then, the "law that creates the cause of action" is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is "really" one of federal law.

## A

Even though state law creates appellant's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties. For appellant's first cause of action—to enforce its levy, under § 18818—a straightforward application of the well-pleaded complaint rule precludes original federal-court jurisdiction. California law establishes a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if appellant has made out a valid claim for relief under state law. See *supra*, at 11–12. The well-pleaded complaint rule was framed to deal with precisely such a situation. As we dis-

cuss above, since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

Appellant's declaratory judgment action poses a more difficult problem. Whereas the question of federal pre-emption is relevant to appellant's first cause of action only as a potential defense, it is a necessary element of the declaratory judgment claim. Under Cal. Civ. Proc. Code Ann. § 1060 (West 1980), a party with an interest in property may bring an action for a declaration of another party's legal rights and duties with respect to that property upon showing that there is an "actual controversy relating to the legal rights and duties" of the parties. The only questions in dispute between the parties in this case concern the rights and duties of CLVT and its trustees under ERISA. Not only does appellant's request for a declaratory judgment under California law clearly encompass questions governed by ERISA, but appellant's complaint identifies no other questions as a subject of controversy between the parties. Such questions must be raised in a well-pleaded complaint for a declaratory judgment.[13] Therefore, it is clear on the face of its well-pleaded complaint that appellant may not obtain the relief it seeks in its second cause of action ("[t]hat the court declare defendants legally obligated to honor all future levies by the Board upon [CLVT]," App. 9) without a construction of ERISA and/or an adjudication of its pre-emptive effect and constitutionality—all questions of federal law.

---

[13] To obtain declaratory relief in California, a party must plead "facts showing the existence of an actual controversy relating to the legal rights and duties of the parties." *Wellenkamp* v. *Bank of America*, 21 Cal. 3d 943, 947, 582 P. 2d 970, 972 (1978).

Appellant argues that original federal-court jurisdiction over such a complaint is foreclosed by our decision in *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667 (1950). As we shall see, however, *Skelly Oil* is not directly controlling.

In *Skelly Oil*, Skelly Oil and Phillips had a contract, for the sale of natural gas, that entitled the seller—Skelly Oil—to terminate the contract at any time after December 1, 1946, if the Federal Power Commission had not yet issued a certificate of convenience and necessity to a third party, a pipeline company to whom Phillips intended to resell the gas purchased from Skelly Oil. Their dispute began when the Federal Power Commission informed the pipeline company on November 30 that it would issue a conditional certificate, but did not make its order public until December 2. By this time Skelly Oil had notified Phillips of its decision to terminate their contract. Phillips brought an action in United States District Court under the federal Declaratory Judgment Act, 28 U. S. C. § 2201, seeking a declaration that the contract was still in effect. 339 U. S., at 669–671.

There was no diversity between the parties, and we held that Phillips' claim was not within the federal-question jurisdiction conferred by § 1331. We reasoned:

> "'[T]he operation of the Declaratory Judgment Act is procedural only.' *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act. Prior to that Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy

like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified." 339 U. S., at 671–672.

We then observed that, under the well-pleaded complaint rule, an action by Phillips to enforce its contract would not present a federal question. *Id.*, at 672. *Skelly Oil* has come to stand for the proposition that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2767, pp. 744–745 (2d ed. 1983). Cf. *Public Service Comm'n of Utah* v. *Wycoff Co.*, 344 U. S. 237, 248 (1952) (dictum).[14]

---

[14] In *Wycoff Co.*, a company that transported films between various points within the State of Utah sought a declaratory judgment that a state regulatory commission had no power to forbid it to transport over routes authorized by the Interstate Commerce Commission. However, "[i]t offered no evidence whatever of any past, pending or threatened action by the Utah Commission." 344 U. S., at 240. We held that there was no jurisdiction, essentially because the dispute had "not matured to a point where we can see what, if any, concrete controversy will develop." *Id.*, at 245. We also added:

"Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establish-

1. As an initial matter, we must decide whether the doctrine of *Skelly Oil* limits original federal-court jurisdiction under § 1331—and by extension removal jurisdiction under § 1441—when a question of federal law appears on the face of a well-pleaded complaint for a state-law declaratory judgment. Apparently, it is a question of first impression.[15]    As the passage quoted above makes clear, *Skelly Oil* relied significantly on the precise contours of the federal Declaratory Judgment Act as well as of § 1331.    Cf. 339 U. S., at 674 (stressing the need to respect "the limited procedural purpose of the Declaratory Judgment Act").    The Court's emphasis that the Declaratory Judgment Act was intended to affect only the remedies available in a federal district court, not the court's jurisdiction, was critical to the Court's reasoning.    Our interpretation of the federal Declaratory Judgment Act in *Skelly Oil* does not apply of its own force to *state* declaratory judgment statutes, many of which antedate the federal statute, see Developments in the Law—Declaratory Judgments—1941–1949, 62 Harv. L. Rev. 787, 790–791 (1949).[16]    Cf. *Nashville, C. & St. L. R. Co.* v. *Wallace,* 288

---

ing a defense to that claim.  This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.  Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law."  *Id.,* at 248.

[15] The existence of this question was noted by the leading proponent of declaratory judgments during the interim between this Court's first indication that state declaratory judgment actions did not fall outside Art. III's "case or controversy" limitation and passage of the federal Declaratory Judgment Act, but the issue did not come before us.  See E. Borchard, Declaratory Judgments 298–300 (1934).

[16] California's Declaratory Judgment Act was enacted 13 years before the federal Act.  See ch. 463, § 1, 1921 Cal. Stats. 689.  California may well regard its statute as having a more substantive purpose than the federal Act as interpreted in *Skelly Oil*.  According to the leading commentator on California procedure: "Declaratory relief is not a special proceeding.  It is an action, classified as equitable by reason of the type of relief offered . . . ."  3 B. Witkin, California Procedure § 705(c), p. 2329 (2d

U. S. 249, 264–265 (1933) (Supreme Court appellate jurisdiction over federal questions in a state declaratory judgment).

Yet while *Skelly Oil* itself is limited to the federal Declaratory Judgment Act, fidelity to its spirit leads us to extend it to state declaratory judgment actions as well. If federal district courts could take jurisdiction, either originally or by removal, of state declaratory judgment claims raising questions of federal law, without regard to the doctrine of *Skelly Oil*, the federal Declaratory Judgment Act—with the limitations *Skelly Oil* read into it—would become a dead letter. For any case in which a state declaratory judgment action was available, litigants could get into federal court for a declaratory judgment despite our interpretation of § 2201, simply by pleading an adequate state claim for a declaration of federal law. Having interpreted the Declaratory Judgment Act of 1934 to include certain limitations on the jurisdiction of federal district courts to entertain declaratory judgment suits, we should be extremely hesitant to interpret the Judiciary Act of 1875 and its 1887 amendments in a way that renders the limitations in the later statute nugatory. Therefore, we hold that under the jurisdictional statutes as they now stand [17]

ed. 1971). See also *Adams* v. *Cook*, 15 Cal. 2d 352, 362, 101 P. 2d 484, 489 (1940); cf. *Mefford* v. *Tulare*, 102 Cal. App. 2d 919, 922, 228 P. 2d 847, 849 (1951) (declaratory judgment is intended "to liquidate uncertainties and controversies"). But cf. *Western Title Guaranty Co.* v. *Sacramento & San Joaquin Drainage Dist.*, 235 Cal. App. 2d 815, 822, 45 Cal. Rptr. 578, 582 (1965) (citing federal cases).

[17] It is not beyond the power of Congress to confer a right to a declaratory judgment in a case or controversy arising under federal law—within the meaning of the Constitution or of § 1331—without regard to *Skelly Oil*'s particular application of the well-pleaded complaint rule. The 1969 ALI report strongly criticized the *Skelly Oil* doctrine: "If no other changes were to be made in federal question jurisdiction, it is arguable that such language, and the historical test it seems to embody, should be repudiated." ALI Study § 1311, at 170–171. Nevertheless, Congress has declined to make such a change. At this point, any adjustment in the system that has evolved under the *Skelly Oil* rule must come from Congress.

federal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment, but *Skelly Oil* would bar jurisdiction if the plaintiff had sought a federal declaratory judgment.

2. The question, then, is whether a federal district court could take jurisdiction of appellant's declaratory judgment claim had it been brought under 28 U. S. C. § 2201.[18] The application of *Skelly Oil* to such a suit is somewhat unclear. Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.[19] Section 502(a)(3) of ERISA specifically grants trustees of ERISA-covered plans like CLVT a cause of action for

---

[18] It may seem odd that, for purposes of determining whether removal was proper, we analyze a claim brought under state law, in state court, by a party who has continuously objected to district court jurisdiction over its case, as if that party had been trying to get original federal-court jurisdiction all along. That irony, however, is a more-or-less constant feature of the removal statute, under which a case is removable if a federal district court could have taken jurisdiction had the same complaint been filed. See Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 234 (1948).

[19] For instance, federal courts have consistently adjudicated suits by alleged patent infringers to declare a patent invalid, on the theory that an infringement suit by the declaratory judgment defendant would raise a federal question over which the federal courts have exclusive jurisdiction. See *E. Edelmann & Co.* v. *Triple-A Specialty Co.*, 88 F. 2d 852 (CA7 1937); Hart & Wechsler 896–897. Taking jurisdiction over this type of suit is consistent with the dictum in *Public Service Comm'n of Utah* v. *Wycoff Co.*, 344 U. S. 237, 248 (1952), see n. 14, *supra*, in which we stated only that a declaratory judgment plaintiff could not get original federal jurisdiction if the anticipated lawsuit by the declaratory judgment defendant would *not* "arise under" federal law. It is also consistent with the nature of the declaratory remedy itself, which was designed to permit adjudication of either party's claims of right. See E. Borchard, Declaratory Judgments 15–18, 23–25 (1934).

injunctive relief when their rights and duties under ERISA are at issue, and that action is exclusively governed by federal law.[20] If CLVT could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA,[21] does a declaratory judgment suit by the State "arise under" federal law?

We think not. We have always interpreted what *Skelly Oil* called "the current of jurisdictional legislation since the Act of March 3, 1875," 339 U. S., at 673, with an eye to practicality and necessity. "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation . . . a selective process which picks the substantial causes out of the web and lays the other ones

---

[20] Section 502(a)(3) provides:

"[A civil action may be brought] by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter . . . ." 29 U. S. C. § 1132(a)(3).

See also n. 26, *infra* (federal jurisdiction over suits under § 502 is exclusive, and they are governed entirely by federal common law).

Even if ERISA did not expressly provide jurisdiction, CLVT might have been able to obtain federal jurisdiction under the doctrine applied in some cases that a person subject to a scheme of federal regulation may sue in federal court to enjoin application to him of conflicting state regulations, and a declaratory judgment action by the same person does not necessarily run afoul of the *Skelly Oil* doctrine. See, *e. g., Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498, 506–508 (1972); *Rath Packing Co.* v. *Becker,* 530 F. 2d 1295, 1303–1306 (CA9 1975), aff'd *sub nom. Jones* v. *Rath Packing Co.,* 430 U. S. 519 (1977); *First Federal Savings & Loan Assn. of Boston* v. *Greenwald,* 591 F. 2d, at 423, and n. 8.

[21] We express no opinion, however, whether a party in CLVT's position could sue under ERISA to enjoin or to declare invalid a state tax levy, despite the Tax Injunction Act, 28 U. S. C. § 1341. See *California* v. *Grace Brethren Church,* 457 U. S. 393 (1982). To do so, it would have to show either that state law provided no "speedy and efficient remedy" or that Congress intended § 502 of ERISA to be an exception to the Tax Injunction Act.

aside." *Gully* v. *First National Bank in Meridian*, 299 U. S., at 117–118. There are good reasons why the federal courts should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law. States are not significantly prejudiced by an inability to come to federal court for a declaratory judgment in advance of a possible injunctive suit by a person subject to federal regulation. They have a variety of means by which they can enforce their own laws in their own courts, and they do not suffer if the pre-emption questions such enforcement may raise are tested there.[22] The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties, see *infra*, at 25, as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes.[23] It did not go so far as to provide that any suit *against* such parties must also be brought in federal court when they themselves did not choose to sue. The situation presented by a State's suit for a declaration of the validity of state law is sufficiently removed from the spirit of necessity and careful limitation of district court juris-

---

[22] Indeed, as appellant's strategy in this case shows, they may often be willing to go to great lengths to avoid federal-court resolution of a pre-emption question. Realistically, there is little prospect that States will flood the federal courts with declaratory judgment actions; most questions will arise, as in this case, because a State has sought a declaration in state court and the defendant has removed the case to federal court. Accordingly, it is perhaps appropriate to note that considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.

[23] Cf. nn. 19 and 20, *supra*. Alleged patent infringers, for example, have a clear interest in swift resolution of the federal issue of patent validity— they are liable for damages if it turns out they are infringing a patent, and they frequently have a delicate network of contractual arrangements with third parties that is dependent on their right to sell or license a product. Parties subject to conflicting state and federal regulatory schemes also have a clear interest in sorting out the scope of each government's authority, especially where they face a threat of liability if the application of federal law is not quickly made clear.

diction that informed our statutory interpretation in *Skelly Oil* and *Gully* to convince us that, until Congress informs us otherwise, such a suit is not within the original jurisdiction of the United States district courts. Accordingly, the same suit brought originally in state court is not removable either.[24]

## B

CLVT also argues that appellant's "causes of action" are, in substance, federal claims. Although we have often repeated that "the party who brings a suit is master to decide what law he will rely upon," *The Fair* v. *Kohler Die & Specialty Co.*, 228 U. S. 22, 25 (1913), it is an independent corollary of the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint, see *Avco Corp.* v. *Aero Lodge No. 735, Int'l Assn. of Machinists*, 376 F. 2d 337, 339–340 (CA6 1967), aff'd, 390 U. S. 557 (1968).

CLVT's best argument stems from our decision in *Avco Corp.* v. *Aero Lodge No. 735.* In that case, the petitioner filed suit in state court alleging simply that it had a valid contract with the respondent, a union, under which the respondent had agreed to submit all grievances to binding arbitration and not to cause or sanction any "work stoppages, strikes, or slowdowns." The petitioner further alleged that the respondent and its officials had violated the agreement by

---

[24] CLVT suggests that we treat the motion to dismiss appellant's complaint it filed in the District Court as a counterclaim for a declaratory judgment under § 502 of ERISA, which might then provide an independent jurisdictional basis for reaching the merits of the pre-emption issue in this case. Brief for Appellees 9–11; see *First Federal Savings & Loan Assn. of Boston* v. *Greenwald, supra,* at 423; *Wong* v. *Bacon*, 445 F. Supp. 1177, 1183–1184 (ND Cal. 1977). Apparently, CLVT never filed an answer or a counterclaim in this case because it stipulated that the District Court could treat its motion to dismiss as a cross-motion for summary judgment, and the court decided the case on that basis. See App. to Juris. Statement 17 (District Court's "Findings of Fact and Conclusions of Law"). Under the circumstances, we decline to adopt such a broad construction of CLVT's pleadings.

participating in and sanctioning work stoppages, and it sought temporary and permanent injunctions against further breaches. App., O. T. 1967, No. 445, pp. 2–9. It was clear that, had petitioner invoked it, there would have been a federal cause of action under § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U. S. C. § 185, see *Textile Workers* v. *Lincoln Mills*, 353 U. S. 448 (1957), and that, even in state court, any action to enforce an agreement within the scope of § 301 would be controlled by federal law, see *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95, 103–104 (1962). It was also clear, however, under the law in effect at the time, that independent limits on federal jurisdiction made it impossible for a federal court to grant the injunctive relief petitioner sought. See *Sinclair Refining Co.* v. *Atkinson*, 370 U. S. 195 (1962) (later overruled in *Boys Markets, Inc.* v. *Retail Clerks*, 398 U. S. 235 (1970)).

The Court of Appeals held, 376 F. 2d, at 340, and we affirmed, 390 U. S., at 560, that the petitioner's action "arose under" § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available *only* under state law. The necessary ground of decision was that the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization."[25] Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco*

---

[25] To similar effect is *Oneida Indian Nation* v. *County of Oneida*, 414 U. S. 661, 677 (1974), in which we held that—unlike all other ejectment suits in which the plaintiff derives its claim from a federal grant, *e. g.*, *Taylor* v. *Anderson*, 234 U. S. 74 (1914)—an ejectment suit based on Indian title is within the original "federal question" jurisdiction of the district courts, because Indian title creates a federal possessory right to tribal lands, "wholly apart from the application of state law principles which normally and separately protect a valid right of possession." Cf. 414 U. S., at 682–683 (REHNQUIST, J., concurring).

stands for the proposition that if a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.

CLVT argues by analogy that ERISA, like § 301, was meant to create a body of federal common law, and that "any state court action which would require the interpretation or application of ERISA to a plan document 'arises under' the laws of the United States." Brief for Appellees 20–21. ERISA contains provisions creating a series of express causes of action in favor of participants, beneficiaries, and fiduciaries of ERISA-covered plans, as well as the Secretary of Labor. § 502(a), 29 U. S. C. § 1132(a).[26] It may be that, as with § 301 as interpreted in *Avco*, any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law.[27] It does not follow, however, that either of appellant's

---

[26] The statute further states that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary," except for actions by a participant or beneficiary to recover benefits due, to enforce rights under the terms of a plan, or to clarify rights to future benefits, over which state courts have concurrent jurisdiction. § 502(e)(1), 29 U. S. C. § 1132(e)(1). In addition, ERISA's legislative history indicates that, in light of the Act's virtually unique pre-emption provision, see § 514, 29 U. S. C. § 1144, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." 120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits).

[27] Indeed, precedent involving other statutes granting exclusive jurisdiction to the federal courts suggests that, if such an action were not within the class of cases over which state and federal courts have concurrent jurisdiction, the proper course for a federal district court to take after removal would be to dismiss the case altogether, without reaching the merits. See, *e. g.*, *General Investment Co.* v. *Lake Shore & M. S. R. Co.*, 260 U. S. 261, 287–288 (1922); *Koppers Co.* v. *Continental Casualty Co.*, 337 F. 2d 499, 501–502 (CA8 1964) (Blackmun, J.).

claims in this case comes within the scope of one of ERISA's causes of action.

The phrasing of § 502(a) is instructive. Section 502(a) specifies which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief. It neither creates nor expressly denies any cause of action in favor of state governments, to enforce tax levies or for any other purpose. It does not purport to reach every question relating to plans covered by ERISA.[28] Furthermore, § 514(b)(2)(A) of ERISA, 29 U. S. C. § 1144(b)(2)(A), makes clear that Congress did not intend to pre-empt entirely every state cause of action relating to such plans. With important, but express limitations, it states that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

Against this background, it is clear that a suit by state tax authorities under a statute like § 18818 does not "arise under" ERISA. Unlike the contract rights at issue in *Avco*, the State's right to enforce its tax levies is not of central concern

---

[28] In contrast, § 301(a) of the LMRA applies to all "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations." We have not taken a restrictive view of *who* may sue under § 301 for violations of such contracts, see, *e. g.*, *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962); *Lewis* v. *Benedict Coal Corp.*, 361 U. S. 459 (1960); cf. *Nedd* v. *United Mine Workers*, 556 F. 2d 190, 196–198 (CA3 1977), or of what contracts are covered by § 301, see *Retail Clerks* v. *Lion Dry Goods, Inc.*, 369 U. S. 17 (1962). See also *Black-Clawson Co.* v. *Machinists Lodge 335*, 313 F. 2d 179, 181–182 (CA2 1962) (suit by employer for declaratory judgment as to contract obligations arises under § 301). But even under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract. Cf. *Automobile Workers* v. *Russell*, 356 U. S. 634, 640–642 (1958).

to the federal statute. For that reason, as in *Gully*, see *supra*, at 11–12, on the face of a well-pleaded complaint there are many reasons completely unrelated to the provisions and purposes of ERISA why the State may or may not be entitled to the relief it seeks.[29] Furthermore, ERISA does not provide an alternative cause of action in favor of the State to enforce its rights, while § 301 expressly supplied the plaintiff in *Avco* with a federal cause of action to replace its pre-empted state contract claim. Therefore, even though the Court of Appeals may well be correct that ERISA precludes enforcement of the State's levy in the circumstances of this case, an action to enforce the levy is not itself pre-empted by ERISA.

Once again, appellant's declaratory judgment cause of action presents a somewhat more difficult issue. The question on which a declaration is sought—that of the CLVT trustees' "power to honor the levies made upon them by the State of California," see *supra*, at 6—is undoubtedly a matter of concern under ERISA. It involves the meaning and enforceability of provisions in CLVT's trust agreement forbidding the trustees to assign or otherwise to alienate funds held in trust, see *supra*, at 4–5, and n. 3, and thus comes within the class of questions for which Congress intended that federal courts create federal common law.[30] Under § 502(a)(3)(B) of

---

[29] In theory (looking only at the complaint), it may turn out that the levy was improper under state law, or that in fact the defendant had complied with the levy. Cf. *Gully* v. *First National Bank in Meridian*, 299 U. S. 109, 117 (1936). Furthermore, a levy on CLVT might be for something like property taxes on real estate it owned. CLVT's trust agreement authorizes its trustees to pay such taxes. Art. V, ¶ 5.21(k), App. 29.

[30] See *supra*, at 24, n. 26. Of course, in suggesting that the trustees' power to comply with a state tax levy is—as a subset of the trustees' general duties with respect to CLVT—a matter of concern under ERISA, we express no opinion as to whether ERISA forbids the trustees to comply with the levies in this case or otherwise pre-empts the State's power to levy on funds held in trust. The same is true of our holding that ERISA does not pre-empt the State's causes of action entirely. Merely to hold

ERISA, a participant, beneficiary, or fiduciary of a plan covered by ERISA may bring a declaratory judgment action in federal court to determine whether the plan's trustees may comply with a state levy on funds held in trust.[31] Nevertheless, CLVT's argument that appellant's second cause of action arises under ERISA fails for the second reason given above. ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not "arise under" that provision.[32]

## IV

Our concern in this case is consistent application of a system of statutes conferring original federal-court jurisdiction, as they have been interpreted by this Court over many years. Under our interpretations, Congress has given the lower federal courts jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates

---

that ERISA does not have the same effect on appellant's suit in this case that § 301 of the LMRA had on the petitioner's contract suit in *Avco* is not to prejudge the merits of CLVT's pre-emption claim.

[31] See n. 19, *supra*. Section 502(a)(3)(B) of ERISA has been interpreted as creating a cause of action for a declaratory judgment. See *Cutaiar* v. *Marshall*, 590 F. 2d 523, 527 (CA3 1979). We repeat, however, the caveat expressed in n. 21, *supra*, as to the effect of the Tax Injunction Act.

[32] CLVT also argues that this case is directly controlled by *Avco*, on the theory that CLVT's trust agreement is a contract covered by § 301 of the LMRA itself. Brief for Appellees 19, n. 19. We reject this argument essentially for the reasons given in n. 28, *supra*. In this case, the State does not rely on any contract within the scope of § 301. The connection between appellant's causes of action to enforce its levy and for a declaration of rights and duties and a suit to enforce the trust agreement is too attenuated for us to say that either "arises under" § 301.

28

the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. We hold that a suit by state tax authorities both to enforce its levies against funds held in trust pursuant to an ERISA-covered employee benefit plan, and to declare the validity of the levies notwithstanding ERISA, is neither a creature of ERISA itself nor a suit of which the federal courts will take jurisdiction because it turns on a question of federal law. Accordingly, we vacate the judgment of the Court of Appeals and remand so that this case may be remanded to the Superior Court of the State of California for the County of Los Angeles.

*It is so ordered.*