**Augustine J. CROCCO, Plaintiff,**

v.

**LOCAL 333, UNITED MARINE DIVISION, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION; Atlantic Coast District of the International Longshoremen's Association and its Executive Board; the International Longshoremen's Association and its Executive Council, Defendants.**

**No. 81–CV–946.**

United States District Court,
N.D. New York.

July 8, 1985.

Frederick M. Altman, Albany, N.Y., for plaintiff.

Vladeck, Waldman, Elias & Englehard, New York City, for defendant Local 333, United Marine Div., ILA; Seymour M. Waldman, New York City, of counsel.

Thomas W. Gleason, New York City, for defendants International Longshoremen's Ass'n and Atlantic Coast Dist., ILA; Charles R. Goldburg, New York City, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Plaintiff, Augustine Crocco, brings this action pursuant to the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* [LMRDA] alleging that he was improperly disciplined by the defendant labor unions. Presently before the court is defendants' motion for summary judgment. For the reasons set forth below, the plaintiff's LMRDA claims are dismissed and the case is remanded to the Supreme Court of the State of New York for Rensselaer County.

## BACKGROUND

Plaintiff is a member and former President of Local 1294, International Longshoremen's Association, AFL–CIO ["Local 1294"]. Local 1294 is a labor union representing longshoremen employed in the Albany, New York area and is an affiliated local of defendant International Longshoremen's Association, AFL–CIO ["ILA"]. Defendant Local 333, United Marine Division, International Longshoremen's Association, AFL–CIO ["Local 333"] is also an affiliated local of the ILA. Defendant Atlantic Coast District, International Longshoremen's Association, AFL–CIO ["ACD"] is the district of the ILA which covers the Albany, New York area.

On March 1, 1981, Local 333 commenced a strike against Cibro Products in Albany, New York. The strike had been authorized by the President of the ILA. The defendants believed that for the strike to be successful it would have to be supported by other unions in the Albany area. The defendants contend that the plaintiff did not support the strike as he was required to do under the ILA Constitution, but rather told a local newspaper reporter that it was not a legitimate strike and that he would not support Local 333. The other unions working at Cibro refused to honor Local 333's picket line, and as a result, the strike was a failure. The members of Local 333 who

had gone out on strike were permanently replaced.

On April 8, 1981, the President of Local 333 filed intra-union disciplinary charges against plaintiff with the ILA. The charges alleged that by failing to support the Local 333 strike and actively interferring with it, Crocco had engaged in conduct detrimental to the welfare of the ILA in violation of Article XVIII of the ILA Constitution. The President of the ILA referred the matter to the ACD and appointed a committee to conduct a hearing on the charges. A hearing was held on June 3, 1981. Mr. Crocco was present at the hearing and was represented by counsel. On August 24, 1981, the committee submitted its findings to the ACD Executive Board. The committee recommended that Crocco be removed from his position as President of Local 1294 and disqualified from running for any ILA office for a period of five years. This recommendation was never implemented and no discipline has ever been imposed against Crocco.

Plaintiff commenced this action on August 31, 1981 in state court. Mr. Crocco sought to permanently enjoin the defendants from removing him as President of Local 1294 or interferring with his right to run for reelection. The action was removed to this court on September 8, 1981.

In November, 1981, Local 1294 held its regularly scheduled election. Crocco ran for reelection but was defeated. He did not file a protest to that election.

Mr. Crocco contends that despite the fact that no formal discipline was ever imposed against him, the mere *threat* of discipline caused him to lose the election. He contends that members of the union who were eligible to vote did not vote for him because they believed that even if Crocco won, he would be removed from office pursuant to the recommendations of the ACD committee. Crocco contends that he was wrongfully charged, that he did not receive a fair hearing, and that the recommendation of discipline caused him to lose the election. He contends that the defendants' actions constitute a violation of the LMRDA.

## DISCUSSION

Mr. Crocco contends that he was improperly disciplined within the meaning of § 101(a)(5) of the Labor-Management Reporting and Disclosure Act which reads as follows:

No member of any labor organization may be *fined, suspended, expelled, or otherwise disciplined* except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). (emphasis added) It is clear from the record that Crocco was never "fined, suspended, expelled, or otherwise disciplined," thus, it would appear that the LMRDA does not apply here. However, Mr. Crocco argues that requiring him to submit to an unfair hearing which resulted in a *recommendation* of discipline is enough to show that he was "otherwise disciplined" within the meaning of the statute. The question of whether requiring a union member to submit to a disciplinary hearing can ever be construed as "discipline" within the meaning of § 411(a)(5) was addressed by the District Court for the Southern District of California in *Deluhery v. Marine Cooks and Stewards Union*, 211 F.Supp. 529 (S.D.Cal.1962). In *Deluhery* the union trial committee recommended that the plaintiff be expelled from union membership, but no actual discipline was ever imposed. The court granted the defendants' motion for summary judgment ruling that the plaintiff was not "otherwise disciplined" within the meaning of § 411(a)(5). The court stated:

With respect to "other discipline", if the plaintiff's position is sound it would appear that a finding of guilt by a Trial Committee with recommended punishment would in all cases constitute "other discipline" within the Act, which would allow the courts to intervene for the purpose of ascertaining whether any irregularities occurred in the proceedings of

the Trial Committee and grant relief if so found. This would virtually make ineffective and superfluous the review and appellate procedures provided for by the Union constitution.

*Deluhery,* 211 F.Supp. at 533. *See also, Childs v. Local 18, International Brotherhood of Electrical Workers,* 719 F.2d 1379, 1384 (9th Cir.1983).

The Second Circuit has suggested that there may be situations in which the imposition of charges and a hearing may rise to the level of "discipline." The court stated:

A union member who has been disciplined in violation of § 101 [§ 411] may recover damages for stigmatization, loss of earnings or similar harm caused by the wrongful conviction, [citations omitted] *and if the charges were prosecuted in bad faith or for an improper motive such as retaliation, for harm attributable to the prosecution itself, even if the member was acquitted or his conviction was reversed on appeal* within the union or to a court. Although a question may exist as to whether damages are recoverable for mental or emotional distress attributable to denial of due process in the absence of some other form of harm, [citation omitted] we need not, for reasons indicated below, decide that issue in this case. [emphasis added]

*Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228, 1245 (2d Cir.1979) *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980).

The defendants correctly point out that this passage from *Rosario* is mere dicta. The plaintiffs in *Rosario* were barred from attending membership meetings and thus, actual discipline within the meaning of § 411(a)(5) had been imposed. The defendants urge this court to completely reject the *Rosario* dicta:

[T]he quotation from the court's opinion in *Rosario* is ... mere dictum.... Moreover, it would appear to be ill-considered dictum as the court starts by hypothesizing a member "who has been disciplined" and then in the same sentence varies the assumption to consider a

member who has been acquitted or whose conviction was reversed on appeal. The court offered no citation of authority for the novel proposition that there exists, in effect, a cause of action for malicious prosecution under § 101(a)(5) when disciplinary proceedings have terminated in favor of the accused. Finally, this language from the court's opinion in *Rosario* has in ensuing 5 years never been cited in any subsequent case. In these circumstances, and in view of the plain meaning of § 101(a)(5), it would appear that the court in *Rosario* meant merely that a member may recover "for harm attributable to the prosecution itself," if actual discipline is also imposed.

Defendants ILA and ACD Reply Memorandum at 6. While the court appreciates the defendants' concern over the *Rosario* dicta, this court is not prepared to hold that a prosecution pursuant to § 101(a)(5) could never constitute "discipline" within the meaning of that section. It is clear, however, that the prosecution in this case does not rise to that level.

In a motion for summary judgment the burden is initially on the moving party to demonstrate that there are no issues of material fact, but the non-moving party must then come forward with affidavits or other material to provide some evidence that there is a material fact in dispute. *Quarles v. General Motors Corporation,* 758 F.2d 839, 840 (2d Cir.1985); *Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238, 244 (2d Cir.1984); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). As the Second Circuit stated in *Quarles:*

Once a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion. *See Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97 (2d Cir.1981). Though "caution should be exercised in granting summary where state of mind is in issue," *Flaherty v. Coughlin,* 713

F.2d 10, 13 (2d Cir.1983), we have recognized that, even in such cases, the existence of undisputed facts can provide an adequate basis for rejecting a claim of improper motivation for a defendant's action. (citations omitted).

*Quarles,* 758 F.2d at 840.

Although Mr. Crocco alleges in his complaint that the charges preferred against him were filed as an act of reprisal, *complaint ¶ 9,* he has not come forward with any evidence to support this allegation.

Crocco has filed two affidavits in this case, one dated February 21, 1984 and one dated May 31, 1984. There is no mention of bad faith prosecution or retaliation in either affidavit. Thus, even if *Rosario* could be read as creating a cause of action for malicious prosecution under § 101(a)(5), the defendants would be entitled to summary judgment as the plaintiff has not come forward with any evidence that the charges against him "were prosecuted in bad faith or for an improper motive." *Rosario* at 1245. This court, however, need not decide whether summary judgment is proper here as the court does not have subject matter jurisdiction over this action.

■ This case was originally commenced in the Supreme Court of the State of New York for Rensselaer County. The defendants removed the action to this court pursuant to 28 U.S.C. § 1441. Although neither party has raised the issue of the court's subject matter jurisdiction, this court is obliged to examine whether subject matter jurisdiction is lacking. *Air Cargo, Inc. v. Local Union 851, International Brotherhood of Teamsters,* 733 F.2d 241, 247 n. 5 (2d Cir.1984); *McLearn v. Cowen & Co.,* 660 F.2d 845, 849 (2d Cir.1981); *Canadian St. Regis Band of Mohawk Indians v. New York,* 573 F.Supp. 1530, 1538 (N.D.N.Y.1983).

When a case is removed from state court, the federal court's jurisdiction is said to be "derived" from the state court's jurisdiction, thus, if the state court had no jurisdiction, the federal court acquires none by removal. Wright & Miller, *Federal Practice and Procedure* § 3721 at 195–97; *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). This "derivative jurisdiction" doctrine can produce anamolous results when the removed case is one over which the federal courts have exclusive jurisdiction. In such a case the state court could not have had jurisdiction over the action because the federal courts have exclusive jurisdiction, thus when the case is removed to federal court, the federal court derives no jurisdiction from state court and must dismiss the action. Although the doctrine has been severely criticized by both commentators and judges, it was recently reaffirmed by the Supreme Court in *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Court stated:

[P]recedent involving ... statutes granting exclusive jurisdiction to the federal courts suggests that, if such an action were not within the class of cases over which state and federal courts have concurrent jurisdiction, the proper course for a federal district court to take after removal would be to dismiss the case altogether, without reaching the merits. (citations omitted).

*Franchise Tax Board of California,* 463 U.S. at 24 n. 27, 103 S.Ct. at 2854 n. 27.

■ After examining the relevant case law and the applicable legislative history, this court agrees with the court in *Safe Workers' Organization, Chap. No. 2 v. Ballinger,* 389 F.Supp. 903 (S.D.Ohio 1974) that the federal courts have exclusive jurisdiction over LMRDA suits brought pursuant to § 102 of the Act, 29 U.S.C. § 412. *See also, Thorp v. Serraglio,* 464 F.Supp. 149, 150 (N.D.Ohio 1978); *Bradley v. Local 119, International Union of Electrical, Radio and Machine Workers,* 236 F.Supp. 724 (E.D.Pa.1964).[1] The court must there-

---

1. The court notes that Judge Cannella of the Southern District of New York rendered a contrary opinion in *Berg v. Watson,* 417 F.Supp. 806, 808 n. 1 (S.D.N.Y.1976). Judge Cannella

fore conclude that the New York State Supreme Court could not have had subject matter jurisdiction over this matter and consequently this court acquired no subject matter jurisdiction when the case was removed. This court, therefore, has no jurisdiction over the plaintiff's LMRDA claims and those claims are hereby dismissed. In paragraphs 10(b) and 10(h) of the complaint the plaintiff alleges that defendants' actions violated the New York State Constitution. The action is therefore remanded to the Supreme Court of New York State for Rensselaer County so that the state court may determine if the allegations in the complaint state a cause of action under state law.

IT IS SO ORDERED.

did not cite any authority in support of his view that state courts have concurrent jurisdiction

over claims brought pursuant to § 102 of the LMRDA, 29 U.S.C. § 412.