UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING INDUSTRY OF the UNITED STATES AND CANADA, LOCAL NUMBER 57, James K. Housekeeper and Jay E. Trinnaman, Plaintiffs–Appellants,

v.

BECHTEL POWER CORPORATION and Ronald Weatherred, Defendants–Appellees.

No. 85–1933.

United States Court of Appeals, Tenth Circuit.

Dec. 7, 1987.

Rehearing Denied Jan. 7, 1988.

Joseph E. Tesch of Tesch and Hufnagel, Heber City, Utah, for plaintiffs-appellants.

Christopher J. Rillo (James P. Hargarten, also of Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Steven E. Clyde of Clyde & Pratt, Salt Lake City, Utah, and Douglas P. Kight of Davis, Arneil, Dorsey, Kight & Parlette, Wenatchee, Wash., of counsel, with him on the brief), for defendants-appellees.

Before LOGAN, SEYMOUR, and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiffs filed this action in a state district court in Utah, alleging that defendants had blacklisted workers at the Intermountain Power Project (the project) in Millard County, Utah, in violation of various provisions of the Utah Constitution and Utah statutes. Defendants removed the case to the United States District Court for the District of Utah, asserting jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claim arose under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Defendants then moved for dismissal on the grounds that (1) plaintiffs had failed to exhaust grievance procedures specified by a collective bargaining agreement in force at the project, and (2) the challenged conduct related to a mandatory subject of collective bargaining and was therefore protected by § 8 of the National Labor Relations Act (NLRA), 29 U.S.C. § 158.

The district court denied plaintiffs' motion to remand for lack of subject matter jurisdiction and, after plaintiffs declined an opportunity to amend their complaint, dismissed the action with prejudice. On appeal, we must consider first whether the district court had jurisdiction under 28 U.S.C. §§ 1331 and 1441. Because we conclude that the district court lacked jurisdiction, we need not consider the other issues raised in the appeal.

Plaintiffs James K. Housekeeper and Jay E. Trinnaman were discharged from employment by B & W Construction Company, a subcontractor at the project. Their complaint alleges that defendant Bechtel Power Corporation (Bechtel), the construction manager at the project, and defendant Ronald Weatherred, a Bechtel employee, prevented plaintiffs from obtaining reemployment at the project by imposing a "work rule" upon all other contractors there. This rule prohibits the contractors from hiring any employee discharged by another employer at the project for thirty days after the discharge.[1] Plaintiffs assert that enforcement of the "30 day discharge rule," including the promulgation and exchange among employers at the project of lists of employees subject to the rule, constitutes blacklisting in violation of article XII, § 19 and article XVI, § 4 of the Constitution of Utah, and Utah Code Ann. § 34-24-1.[2]

---

**1.** Article VI, § 4 of the Stabilization Agreement and Project Work Rules, the collective bargaining agreement governing the terms of the individual plaintiffs' employment at the project, provides:

"When an employee is discharged, he shall be paid his wages in accordance with the Project policy. If the employee voluntarily quits his Employer, he shall be paid the wages due him on the next regular payday. *An employee who voluntarily quits will not be rehired on the Project for a period of at least thirty (30) days.*"

I.R. 22 (emphasis added). Bechtel construes the final sentence of this provision as encompassing employees who, like Housekeeper and Trinnaman, have been discharged "for cause" by their employers. Plaintiffs, however, maintain that the "30 day discharge rule," as applied to the individual plaintiffs, is not a part of the collective bargaining agreement.

**2.** Those provisions are as follows:

"**[Blacklisting forbidden.]**
Every person in this State shall be free to obtain employment whenever possible, and any person, corporation, or agent, servant or employee thereof, maliciously interfering or hindering in any way, any person from obtaining or enjoying employment already obtained, from any other corporation or person, shall be deemed guilty of a crime. The Legislature shall provide by law for the enforcement of this section."

Utah Const. art. XII, § 19.

"**[Exchange of blacklists prohibited.]**
The exchange of blacklists by railroad companies, or other corporations, associations or persons is prohibited."

*Id.* art. XVI, § 4.

"**Blacklisting of employees prohibited.—**
No person shall blacklist or publish, or cause to be published or blacklisted, any employee discharged or voluntarily leaving the service of any person, company or corporation with

When an action "arising under the Constitution, laws, or treaties of the United States" is commenced in state court, the defendant or defendants may remove it to the federal district court for the district in which the action is pending. 28 U.S.C. §§ 1331, 1441(a), (b). The "arising under" language of § 1331 "has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983).

■ Two clear principles have emerged, however, which form a sufficient basis for our determination of this appeal. First, when federal law creates the cause of action, the case arises under federal law. *See id.* at 8–9, 103 S.Ct. at 2845–46; *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). Second, an action does not arise under federal law unless a substantial, disputed question of federal law is an essential element of the plaintiffs' well-pleaded complaint. *Franchise Tax Board*, 463 U.S. at 10–13, 103 S.Ct. at 2846–48; *Gully v. First National Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

■ The well-pleaded complaint rule applies even when "both parties admit that the only question for decision is raised by a federal pre-emption defense." *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2848. Despite this, a complaint purporting to rely entirely on state-created rights and remedies sometimes may be deemed to have stated a cause of action arising under federal law. "[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 24, 103 S.Ct. at 2854. Thus, in *Avco Corp.*

*v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Supreme Court held that because suits for violation of collective bargaining agreements are to be governed entirely by federal law pursuant to LMRA § 301, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), a suit brought in state court to enjoin a union and its members from violating a "no-strike" clause in such an agreement was removable to federal court, notwithstanding the petitioner's reliance on state law. *Avco*, 390 U.S. at 560, 88 S.Ct. at 1237.

Defendants in the instant case argue that because plaintiffs' state law claims "concern a matter [the 30 day rule] addressed by the collective bargaining agreement," they are preempted by § 301 of the LMRA, and the action is therefore one arising under federal law.

In analyzing this issue, we first delineate the two types of federal labor law preemption. The first type, which is not involved at this stage of the appeal, arises under §§ 7 and 8 of the NLRA. Sections 7 and 8 do not confer original federal court jurisdiction over actions within its scope; they confer jurisdiction in the first instance upon the National Labor Relations Board (NLRB).

Under principles announced in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), both state and federal courts generally lack original jurisdiction to determine disputes involving conduct actually or arguably prohibited or protected by the NLRA. *Id.* at 244–45, 79 S.Ct. at 779–80; *Belknap, Inc. v. Hale*, 463 U.S. 491, 498, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 (1983); *see also Viestenz v. Fleming Cos.*, 681 F.2d 699, 702 (10th Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982). The Supreme Court has considered it essential to the administration of the NLRA that determinations regarding the scope and effect of

intent and for the purpose of preventing such employee from engaging in or securing similar or other employment from any other person, company or corporation."
Utah Code Ann. § 34–24–1.

In adddition, Utah Code Ann. § 34–24–2 imposes criminal penalties on employers engaging in blacklisting practices forbidden by § 34–24–1.

§§ 7 and 8 "be left in the first instance to the National Labor Relations Board." *Garmon*, 359 U.S. at 244–45, 79 S.Ct. at 779–80.

The *Garmon* doctrine does not, however, preempt all local regulation that in any way touches or concerns the employment relationship. *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290, 295–96, 97 S.Ct. 1056, 1060–61, 51 L.Ed.2d 338 (1977). The Supreme Court has refused to prohibit state regulation otherwise within the scope of *Garmon* when the conduct at issue is of only peripheral concern to the NLRA or touches interests deeply rooted in local feeling and responsibility. *Id.* at 296–97, 97 S.Ct. at 1061–62; *Belknap*, 463 U.S. at 498, 103 S.Ct. at 3177.

> "In such cases, the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the National Labor Relations Board's ability to adjudicate controversies committed to it by the Act, and the risk that the State will sanction conduct that the Act protects."

*Belknap*, 463 U.S. at 498–99, 103 S.Ct. at 3177 (citations omitted); *see also Sears, Roebuck & Co. v. San Diego County District Council of Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (discussing separate considerations underlying arguably prohibited and arguably protected branches of *Garmon* preemption doctrine).[3]

■ In cases in which preemption under the NLRA does not automatically deprive both state and federal courts of jurisdiction in favor of the jurisdiction of the NLRB, such preemption is simply a defense to state law claims touching on areas covered by the federal enactment. *See Sears*, 436 U.S. at 205, 98 S.Ct. at 1761 (permitting state court to "evaluate the merits of an argument that certain trespassory activity

is protected" by NLRA § 7). As a defense, it cannot confer jurisdiction on the federal courts. " '[A] suit brought upon a state statute does not arise under an act of Congress ... because prohibited thereby.' " *Franchise Tax Board*, 463 U.S. at 12, 103 S.Ct. at 2848 (quoting *Gully*, 299 U.S. at 116, 57 S.Ct. at 99). Thus, preemption under NLRA §§ 7 or 8 provides no basis for removal of the instant case to the federal court.

The second type of labor law preemption, which is involved here, concerns § 301 of the LMRA. Section 301 vests concurrent jurisdiction in state and federal courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). The federal district courts have jurisdiction over such suits even if the contractual violation is also an unfair labor practice within the NLRB's jurisdiction. *Farmer*, 430 U.S. at 297 n. 8, 97 S.Ct. at 1062 n. 8.

Therefore, to determine whether the federal district court had jurisdiction in this case, we must determine whether plaintiffs' complaint essentially alleges a violation of the collective bargaining agreement in force at the Intermountain project. If so, LMRA § 301 controls, and "the balancing of state and federal interests required by *Garmon* pre-emption is irrelevant, since Congress, acting within its power under the Commerce Clause, has provided that federal law must prevail," *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 214 n. 9, 105 S.Ct. 1904, 1912 n. 9, 85 L.Ed.2d 206 (1985). The case would then be removable.

■ Plaintiffs have often attempted to avoid federal jurisdiction under § 301 by framing their complaints in terms of such

---

**3.** State causes of action relating to conduct that the NLRA neither protects nor prohibits may also be substantively preempted when "it is determined that Congress intended the conduct to be unregulated and left to the free play of economic forces." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 n. 8, 103 S.Ct. 1453, 1459 n. 8, 75 L.Ed.2d 368 (1983)

(citing *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976)). In such cases, the NLRB's exclusive jurisdiction is not at issue, and the preemption question must be determined in the first instance by the courts. *Sears*, 436 U.S. at 199 n. 30, 98 S.Ct. at 1759.

diverse state law theories as wrongful discharge, intentional infliction of emotional distress, conspiracy, and misrepresentation. *See, e.g., Oglesby v. RCA Corp.*, 752 F.2d 272, 276–78 (7th Cir.1985); *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir.1984); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir.1980). Under the "artful pleading" doctrine, federal courts look beyond the allegations of the complaint, often to the petition for removal, to determine whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement. *See Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 931 & n. 1 (9th Cir.), *aff'd*, — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Oglesby*, 752 F.2d at 278; *Fristoe*, 615 F.2d at 1212. If the courts find it to be such a case, the complaint is recharacterized as one arising under § 301, to which federal substantive law applies. *Olguin*, 740 F.2d at 1472.

In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the United States Supreme Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted by § 301. *Id.* at 220, 105 S.Ct. at 1916. Specifically, it held that § 301 preempted a state law tort action for bad-faith delay in making disability-benefit payments due under a collective bargaining agreement.[4] The Court noted that the need for uniform interpretation of collective bargaining contracts necessitates some degree of federal preemption under § 301: " 'The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' " *Id.* at

210, 105 S.Ct. at 1910 (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962)). Therefore, the Court concluded,

> "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."

*Id.* at 211, 105 S.Ct. at 1911.

Noting that not every dispute touching a provision of a collective bargaining agreement is preempted by § 301, the Court in *Allis–Chalmers* drew a distinction between aspects of the employment relationship that are within and without the scope of that section:

> "Section 301 on its face says nothing about the substance of what private parties may agree to in a labor contract. Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored. *Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law.* In extending the pre-emptive effect of § 301 beyond suits for breach of contract, *it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.*

---

4. *Allis–Chalmers* was decided on certiorari to the Wisconsin Supreme Court; it did not involve the issue of federal removal jurisdiction. But the Supreme Court applied the principles announced in *Allis–Chalmers* in *International Brotherhood of Elec. Workers v. Hechler*, — U.S. —, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), to determine that the district court had removal jurisdiction, under 28 U.S.C. § 1441 and LMRA § 301, over a state law tort claim that a union had breached its duty of care to provide a union member with a safe workplace because the claim necessarily rested on the union's having assumed the duty by the collective bargaining agreement. *Id.* at —, 107 S.Ct. at 2166.

Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements. Our analysis must focus, then, on whether the Wisconsin tort action for breach of the duty of good faith as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract."

*Id.* at 211–13, 105 S.Ct. at 1911–12 (footnotes and citation omitted) (emphasis added). Because the right asserted under state tort law in *Allis–Chalmers* was derived from rights established by the collective bargaining contract, and any attempt to assess liability would inevitably involve interpretation of that contract, the Court held the state tort preempted by federal law. *Id.* at 217, 218, 220, 105 S.Ct. at 1914–16.

The plaintiffs in the case before us have asserted what appears to be a novel claim under Utah law. Utah courts have not addressed whether a civil cause of action exists under the constitutional and statutory provisions quoted *supra* note 2, and, if so, what elements plaintiffs would be required to prove and what defenses might be available.[5] But if such a cause of action

does exist, it is derived entirely from rights and duties created by state law and not from the terms, express or implied, of the collective bargaining agreement here invoked.[6] The Utah blacklisting laws arguably confer "nonnegotiable state-law rights on ... employees independent of any right established by contract." *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912. If these rights are in fact nonnegotiable, they clearly are not preempted under *Allis–Chalmers,* because the state court can determine whether defendants have engaged in conduct prohibited by Utah law without referring to or interpreting the contract.

It is possible that a Utah court would find the collective bargaining agreement relevant to show waiver or consent as a state-law defense to plaintiffs' allegations of blacklisting.[7] If such a defense is available, one might then argue, under *Allis–Chalmers,* that plaintiffs' state law rights are negotiable, and that "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 105 S.Ct. at 1912. But the Supreme Court rejected a similar argument in *Caterpillar, Inc. v. Williams,* — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). There, the Court said:

"It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that

**5.** *But see State v. Packard,* 122 Utah 369, 250 P.2d 561, 563 (1952) (describing Article XII, § 19 as "one of the basic freedoms vouched safe [sic] by our state constitution," which "complements and makes more meaningful the other rights guaranteed as part of our constitutional liberties").

**6.** When an independent state cause of action parallels rights established in a collective bargaining agreement, preemption under § 301 may be necessary to prevent the complaining party from sidestepping grievance procedures specified in the agreement. *See Strachan v. Union Oil Co.,* 768 F.2d 703, 704–05 (5th Cir. 1985); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 668 (9th Cir.1985); *Vantine v. Elkhart Brass Mfg. Co.,* 762 F.2d 511, 517 (7th Cir.1985); *see also Allis–Chalmers,* 471 U.S. at 219, 105 S.Ct. at 1915 (holding that preemption of "derivative" tort claims is necessary to "preserve the central role of arbitration in our 'system of

industrial self-government' "). In the case before us, however, the collective bargaining agreement grants no rights to discharged employees like Housekeeper and Trinnaman comparable to those they seek to vindicate in this lawsuit.

**7.** *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts* § 18, at 122–24 (1984) (discussing consent as a bar to tort actions based on criminal conduct; split of authority noted); *Restatement (Second) of Torts* § 892c (1979) (consent to criminal conduct bars recovery in tort unless plaintiff is within a class of persons intended to be protected by the criminal statute irrespective of their consent); *cf. Elkington v. Foust,* 618 P.2d 37, 40 (Utah 1980) (consent not a defense to tort action for sexually assaulting and abusing a minor, in part because "any consensual agreement to engage in such conduct would be rejected by the law as against public policy and void").

agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal."

*Id.* 107 S.Ct. at 2433 (emphasis in original) (footnote omitted).

■ We hold that plaintiffs' blacklisting claims are not preempted by § 301 of the LMRA, and the district court therefore lacked jurisdiction under 28 U.S.C. §§ 1331 and 1441. We express no opinion concerning whether NLRA §§ 7 and 8 preempt plaintiffs' claims; these are matters to be addressed in the first instance by the Utah state courts.

REVERSED.