UIU SEVERANCE PAY TRUST FUND,
Plaintiff–Cross–Appellee,

v.

LOCAL UNION NO. 18–U, UNITED
STEELWORKERS OF AMERICA, De-
fendant–Appellant–Cross–Appellee,

and

Harold Oliver, Defendant–Appellee–
Cross–Appellant.

Nos. 92–2183, 92–2284.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1993.

Decided July 9, 1993.

Brian C. Walker (argued), James L. Fari-
na, Hoey & Farina, Chicago, IL, for U.I.U.
Severance Pay Trust Fund.

Anthony Pinelli (argued), Chicago, IL, for
Local Union No. 18–U, United Steelworkers
of America.

Anthony G. Erbacci, Joseph T. Moriarty
(argued), Erbacci, Syracuse & Cerone, Chi-
cago, IL, for Harold Oliver.

Before CUDAHY, POSNER and
RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

Local 18–U (the Union) is a labor union
presently affiliated with the United Steel-
workers of America (USW). Harold Oliver
served as the Union's full-time business rep-
resentative from June 1981 until September
1990. During that time, the Union made
contributions on his behalf to the Upholster-

ers International Union Severance Pay Trust Fund (the Fund).[1]

The district court found that the Fund is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. The parties have not challenged this finding on appeal. But because this issue is jurisdictional we must nevertheless consider it at the outset.[2] We need not, however, tarry long over it. ERISA regulates both employee pension plans and "employee welfare benefit plans." 29 U.S.C. §§ 1002(3) & 1003(a). An "employee welfare benefit plan" is any plan, fund or program established by an employer for the purpose of providing money for, *inter alia,* severance benefits. 29 U.S.C. §§ 186(c) & 1002(1). We have thus held that severance benefit plans are employee welfare benefit plans. *Young v. Standard Oil (Indiana),* 849 F.2d 1039, 1045 (7th Cir.), *cert. denied,* 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988). According to its own terms, the Fund contains assets "earmarked for purposes of severance pay" for certain union employees. Declaration of Trust § 1.03. Consequently, we find quite readily that the Fund is an "employee welfare benefit plan" subject to ERISA.

This is not a typical ERISA action pitting a plan beneficiary against the plan or its trustees. Here the plan (the Fund) has conceded its liability and the controversy lies instead between a beneficiary (Oliver) and his employer (the Union). Because the Union agrees that Oliver is entitled to most of the contributions made to the Fund on his behalf, the only dispute is over certain contributions to the Fund that Oliver contends are proper payments toward his deferred compensation but that the Union asserts were made without proper authorization.

The Union paid $82,517.79 to the Fund on Oliver's behalf. After he retired, Oliver requested payment of this amount from the Fund. The Union, however, contended that $37,906.79 was wrongly contributed to Oliver's account and demanded a refund. The Fund admits that it owes the full $82,517.79, or some portion thereof, to Oliver, the Union or both.[3] To avoid paying twice, the Fund brought a complaint for interpleader and declaratory relief in Illinois state court to resolve the conflicting claims. The Union removed the case to the district court. The parties stipulated that the case was properly brought as an interpleader and Oliver and the Union proceeded to file cross-motions for summary judgment. The district court entered judgment in favor of Oliver but denied his request for attorneys' fees. Both Oliver and the Union appeal.

The parties agree that for the nine years Oliver served as the Union's full-time business representative the Union was obliged to make a contribution to the Fund equal to ten percent of his salary. Declaration of Trust § 9.01. They also agree that the Union could with the "consent of the General Executive Board make a greater contribution on account of a covered person," which Oliver was. Declaration of Trust § 9.03.[4] Begin-

---

1. Before associating with USW, the Union's parent organization was the Upholsterers International Union (UIU). UIU established the Fund in 1966, defining its terms in a Declaration of Trust. UIU merged with USW in 1985. Pursuant to the merger agreement, USW was to administer the Fund in accordance with its own constitution and bylaws.

2. The parties have not suggested that there is a diversity of citizenship. Federal subject matter jurisdiction exists, therefore, if at all, under the general federal question statute, 28 U.S.C. § 1331, or under ERISA itself. 29 U.S.C. § 1132(e). In either case, the existence of an "ERISA-governed plan" is an essential precursor to federal jurisdiction. The district court clearly had "jurisdiction to determine whether [it had] subject matter jurisdiction." *Shannon v. Shan-*

*non,* 965 F.2d 542, 545 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 677, 121 L.Ed.2d 599 (1992). And although the parties are apparently satisfied with the district court's resolution of the jurisdictional question, "[w]e have a responsibility in every case to determine independently whether this Court has subject matter jurisdiction ....." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 384 (7th Cir.1988).

3. The parties have stipulated that Oliver is entitled to at least $44,611 ($82,517.79 less $37,906.79).

4. Prior to UIU's merger with USW, the General Executive Board was UIU's international governing body. Although UIU is now a division of USW, it apparently still has its own governing board.

ning in January 1983, the Union, pursuant to Oliver's instruction, increased the contribution made to the Fund on his behalf from ten to twenty percent of his salary. The General Executive Board apparently did not give its prior approval for this increase as § 9.03 required. In June 1987, the chairman of the UIU division of USW questioned Oliver regarding the increased contributions. According to Oliver, the Union, with the approval of the Fund's chief auditor, decided to increase the contribution made on his behalf in lieu of a salary increase. The Union disagrees and argues that the contribution increase was a rogue act undertaken by Oliver without any authorization.[5]

The district court concluded that Oliver was entitled to the disputed sum, even if he acted outside of his authority in ordering the increase in contributions on his behalf. The Declaration of Trust provides that a person on whose behalf Fund contributions have been made *shall* be paid such contributions in a timely fashion unless that person is, through proper union procedures, found to have violated a provision of the UIU General Laws. Declaration of Trust §§ 10.01 & 11.01. The district court determined that Oliver is not disqualified from receiving severance pay because, even if his actions did violate one of the UIU General Laws, the Union did not follow its own procedures in bringing such charges against him. *UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of America*, No. 91 C 2285, slip op. at 11–12, 1992 WL 92062 (N.D.Ill. Apr. 22, 1992) (hereinafter

Mem.Op.). The Union does not challenge this finding on appeal. Rather, it argues, as it did in the district court, that the disputed contributions were void *ab initio* because they were not properly authorized. It contends that these unauthorized contributions are similar to the sort of mistaken contributions that several courts have held are refundable under ERISA. The district court did not directly address this point, largely limiting its discussion of the Union's claim to a certain provision of the Labor–Management Reporting and Disclosure Act.[6] Mem. Op. at 12–13.

The Union's argument is, in essence, that contributions made without proper authority are not really contributions at all and that Oliver has no claim to them because his rights are limited to "*contributions* credited to his account."[7] Declaration of Trust § 10.01 (emphasis supplied). The Union seeks to recover these payments but acknowledges that it cannot point to a particular section of ERISA that allows it to do so. Instead, as the district court noted, it relies upon "the federal common law of ERISA." Mem.Op. at 4. Given the confusion in this area, the district court perhaps understandably did not discuss the availability of such a common law cause of action. But the Union clearly has not waived this issue, and so we proceed to examine it.[8]

The Union rests its case upon a cause of action, which can apply only to employee benefit plans governed by ERISA, that ERISA itself does not expressly authorize.[9]

---

**5.** The Union also contends that Oliver, again without authorization, ordered that the interest earned on Union employees' Fund accounts be returned to those accounts rather than retained for the Union's benefit as had been the custom. This practice effectively increased the contribution to Oliver's Fund account, and its effects are reflected in the calculation of the contributions subject to dispute.

**6.** The Union disclaims any reliance on the Labor–Management Reporting and Disclosure Act as a separate basis for recovery. Appellant's Br. at 16.

**7.** If the Union prevails, Oliver's suit is rendered moot. That is, if the Union has a cause of action to recover unauthorized contributions, and if the

disputed contributions were in fact unauthorized, the Union is entitled to a refund. This is the same as saying that the disputed contributions were never made at all. By beginning its analysis with Oliver's claim, which by its very nature extends only to Fund contributions, the district court seems to have put the cart before the horse.

**8.** As previously mentioned, the district court specifically referred to the Union's reliance on a common law cause of action. Moreover, the Union itself, in its Rule 12(m) Statement to the district court, raised federal common law as a basis for recovery.

**9.** The Union meets the statutory definition of an "employer." 29 U.S.C. § 1002(5). ERISA establishes only six civil actions, 29 U.S.C. § 1132(a)(1)–(6), none in favor of employers.

The Supreme Court has noted that "[t]he six carefully integrated civil enforcement provisions found in [§ 1132 of ERISA] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate separately." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). We have, accordingly, been extremely reluctant to find that ERISA creates certain causes of action by implication in addition to those enumerated in the statute itself. *See, e.g., Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 540 (7th Cir. 1991). The Union, however, does not ask us to imply a "new" cause of action under ERISA, but simply urges us to fill in ERISA's interstices with federal common law.[10] And we find that the Union may seek recovery of the disputed sum as a matter of federal common law.

We begin with another cautionary observation by the Supreme Court: "The establishment of ... a self-consciously comprehensive program by Congress ... strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." *City of Milwaukee v. Illinois*, 451 U.S. 304, 319, 101 S.Ct. 1784, 1793, 68 L.Ed.2d 114 (1981). In the particular context of ERISA, however, the Court has stated that "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 2854 n. 26, 77 L.Ed.2d 420 (1983) (quoting 120 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)). This receptiveness to federal common law notwithstanding the comprehensive character of ERISA is the product of ERISA's broad preemption provision. *Id.* Ordinarily, parties are not insulated from state causes of action simply because the activity in which they are engaged is subject to federal regulation.[11] But ERISA provides, with certain exceptions, none of which are material here, that it "shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan...." 29 U.S.C. § 1144. As a result, the Union must rely upon federal law even for a simple claim such as the one before us.

■ The Union seeks to assert what would be, under state law, a claim for restitution. Several district judges in this circuit as well as other courts of appeals have concluded that ERISA permits such a cause of action. *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957, 965–67 (1st Cir.1989); *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052, 1056–58 (3d Cir.1989); *Central States, Southeast and Southwest Areas Pension Fund v. Howard Baer, Inc.*, 753 F.Supp. 241, 244–45 (N.D.Ill.1991) and *Soft Drink Ind. Local Union No. 744 Pension Fund v. Coca–Cola Bottling Co. of Chicago*, 679 F.Supp. 743, 748–51 (N.D.Ill.1988). Based on this authority as well as the logic of the situation we believe that "recovery of contributions mistakenly made can be attempted under a [federal] common-law theory of restitution." *Kwatcher*, 879 F.2d at 967. ERISA *permits* plan trustees to return to employers payments made to a plan which are the result of a mistake of law or fact, 29 U.S.C. § 1103(c)(2)(A)(i) & (ii), but it does

---

**10.** We recognize that the difference between an implied cause of action and one that exists as a matter of federal common law is subtle. Since our analysis turns in both instances on the intent of Congress, it might seem that we could not find one to exist but not the other. "When determining whether to infer private rights of action under a federal statute, the 'issue is whether Congress meant to give an injured person a right himself to enforce the federal statute directly against the [wrongdoer] or whether the injured person can do no more than ask the federal government to enforce the statute.'" *Kwatcher v. Massachusetts Serv. Employee Pension Fund*, 879 F.2d 957, 965 (quoting *N.A.A.C.P. v. Secretary of H.U.D.*, 817 F.2d 149, 152 (1st Cir.1987)). This analysis seems to be particularly, perhaps uniquely, applicable to those statutes in which Congress has granted enforcement authority to a federal agency but has not expressly created a concomitant private cause of action. The creation of a federal common law cause of action, however, is appropriate when, as here, it is necessary to "'effectuate the statutory pattern enacted in the large by Congress.'" *Plucinski v. I.A.M. Nat'l Pen. Fund*, 875 F.2d 1052, 1056 (3d Cir.1989) (quoting *Van Orman v. American Ins. Co.*, 680 F.2d 301, 311 (3d Cir.1982)).

**11.** For example, issuers of securities are subject to both the federal securities laws and the so-called "blue sky" laws of the various states.

not establish a cause of action by which employers may seek to *compel* such a refund. Absent a judicially-crafted cause of action, employers are left to the mercy of plan trustees who have no financial incentive to return mistaken payments. Employers are already penalized for failing to make required contributions. 29 U.S.C. § 1132(g)(2). If they are not permitted to seek recovery of mistaken contributions they may be less inclined to sponsor ERISA-qualified plans at all. This would undermine ERISA's goal of expanding pension and welfare benefit plan coverage. *Kwatcher,* 879 F.2d at 966.

■ We cannot determine at this time whether the Union is entitled to recover the contributions in question under a common-law theory of restitution since the district court has yet to consider this issue in the first instance. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (federal appellate court will generally not consider an issue not passed upon below). We stress though that, because the cause of action we are authorizing is equitable in nature, recovery will not follow automatically upon a showing that the Union contributed more than was required but only if "the equities favor it." *Kwatcher* at 967 (quoting *Chase v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 753 F.2d 744, 749 (9th Cir.1985)). In determining whether the Union is entitled to a refund, the district court should consider those factors which have guided chancery courts, historically, in restitutionary actions. Although no complete catalog of such factors is possible, we note that the district court will likely have to consider the following on remand: (1) are unauthorized contributions the sort of mistaken payments that equity demands be refunded? [12] (2) has the Union delayed bringing this action for so long that laches, or some other equitable defense, bars recovery? (3) in the same vein, has the Union, by continuing the payments for years without apparent question, somehow ratified past payments? and (4) since the Fund has

agreed that it is not entitled to keep the disputed amount in any event, can the Union demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied? If the court determines that the Union is not entitled to a refund, it may then decide whether Oliver is entitled to the contested amount "under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Finally, the district court may consider Oliver's request for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1).

The judgment of the district court is VACATED and the case REMANDED for further proceedings not inconsistent with this opinion.

---

**12.** There is clearly a difference between contributions that are mistakenly made to an employee benefit fund and those that occur, as is alleged here, as a result of unauthorized activity. But from an employer's perspective this seems to be a difference without a distinction. To an employer, contributions made by an insubordinate employee may be as "mistaken" as those that derive from a misapprehension of law or fact.