Rene Wilfredo Molina CALERO,
Plaintiff–Appellant,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE; William S. Slattery,
in his official capacity as District Di-
rector of the Immigration and Naturali-
zation Service; Richard Thornburgh, in
his capacity as Attorney General of the
United States and the Immigration and
Naturalization Service, an agency of
the Department of Justice, Defendants–
Appellees.

No. 861, Docket 91–6247.

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1992.

Decided Feb. 19, 1992.

Neil H. Afran, International Human Rights Asylum Litigation Clinic, Touro College, Jacob D. Fuchsberg Law Center,

Huntington, New York City, for plaintiff-appellant.

Diogenes P. Kekatos, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., James A. O'Brien, III, Sp. Asst. U.S. Atty., Thomas A. Zaccaro, Asst. U.S. Atty., of counsel), for defendants-appellees.

Before TIMBERS and WINTER, Circuit Judges, and MUKASEY, District Judge.*

WINTER, Circuit Judge:

Appellant Rene Wilfredo Molina Calero appeals from Judge Patterson's order dismissing his complaint under Fed.R.Civ.P. 12(b)(1) for lack of subject-matter jurisdiction, and under Fed.R.Civ.P. 12(b)(6), for failure to state a claim. Calero, a fifteen-year-old citizen of El Salvador, unlawfully entered the United States on February 12, 1991. The Immigration and Naturalization Service ("INS") served Calero with an order to show cause and notice of hearing, charging that his illegal entry made him deportable. Calero indicated to INS officials that he wished to have a hearing before an immigration judge. In late February, Calero was released from INS custody on his own recognizance and moved to Huntington Station, New York, to live with his brother-in-law.

After two adjournments, the deportation proceedings resumed in New York City on June 26, 1991 before Immigration Judge Peggy M. McManus. Bruno Joseph Bembi, an attorney who had accompanied Calero at the two adjourned proceedings, refused to act as counsel to Calero until a guardian ad litem was appointed. In response, Immigration Judge McManus explained to Calero that at the next hearing he could appear with an authorized representative, or with a friend, guardian or relative. She also provided Calero with a list of free legal services from which he might obtain representation. The proceedings were then adjourned until July 3, 1991. When they resumed, Bembi entered an appearance as Calero's attorney. Immigration Judge Mc-

Manus, however, refused to accept written notice that Calero was not waiving his request for a guardian ad litem. She then adjourned the proceedings to allow Calero to pursue litigation over the guardian issue in the Southern District of New York.

On April 25, 1991, Calero filed the instant action, requesting the appointment, at the government's expense, of a guardian ad litem for Calero. The basis for jurisdiction stated in the complaint was Fed. R.Civ.P. 17(c), which provides that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." The complaint also asserted that, if a guardian ad litem were not appointed, Calero would be denied due process. On June 28, 1991, the government moved to dismiss the complaint and on July 30, Calero filed an amended complaint, which sought to supplement the jurisdictional allegations. Judge Patterson dismissed Calero's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), 770 F.Supp. 197 (S.D.N.Y.1991), and Calero appealed.

■ We first examine whether subject-matter jurisdiction exists. Calero's reliance upon Fed.R.Civ.P. 17(c) is unavailing. The civil "rules govern the procedure in the United States district courts," Fed.R.Civ.P. 1, and there is nothing in Rule 17(c) that suggests its applicability to administrative proceedings in the executive branch. To the contrary, it applies only to "an infant or incompetent person not otherwise represented in an action," a reference to a civil action in a district court. *See* Fed.R.Civ.P. 3.

■ However, we conclude that Calero does raise a federal question. The amended complaint asserts that, if INS regulations and statutes do not permit the appointment of a guardian ad litem for Calero, then this failure violates the Due Process Clause of the Fifth Amendment.

---

* The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

Federal courts have subject-matter jurisdiction to consider such a claim. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2855–2856, 77 L.Ed.2d 420 (1983) (courts have federal question jurisdiction over "those cases in which ... the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.").

 As to the merits of Calero's request, we agree with the district court that Calero fails to state a claim for relief and affirm the dismissal pursuant to Fed. R.Civ.P. 12(b)(6). Under *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), four factors are relevant to the determination of whether additional procedural safeguards are needed at deportation proceedings: the private interest affected by government action, the risk of erroneous deprivation under existing procedures, the probable value of additional safeguards, and finally, the government's interest, including the financial and administrative burdens resulting from the imposition of the additional safeguard.

Calero's complaint contains no allegations to sustain his claim that the appointment of a guardian ad litem would enhance his capability to address issues arising out of the deportation proceedings. Calero is fifteen and is capable of communicating to his attorney whether he wishes to remain in this country or return to El Salvador. Moreover, Calero presently resides with four adult relatives who can assist him in considering his plight and in dealing with his attorney. We therefore perceive little benefit to Calero from the appointment of a guardian either in his decision to oppose or not to oppose deportation or in the conduct of the deportation proceedings. *See id.* Needless to say, establishment of a right to a government-paid guardian in ordinary deportation proceedings would have substantial fiscal consequences. *See id.*

Given the routine nature of the allegations in the instant complaint, we need not address whether the appointment of such a guardian may be constitutionally required in isolated, unusual and egregious circumstances. *See, e.g., Johns v. Department of Justice,* 624 F.2d 522 (5th Cir.1980) (guardian appointed to represent five-year-old Mexican child allegedly kidnapped from natural mother and illegally brought into United States, because neither natural mother nor American couple with physical custody could adequately represent minor's interests).

Affirmed.