**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHELBY LEARY, Commissioner, State
of West Virginia Division of Labor,
on behalf of David Belcher, Calvin
Cheeks, Jeffrey Cheeks, Ransome
Mitchem, Johnny Brown, David
Denton, David Hagerman, Harlin
Hagerman, Robert Hill, Stephen
O'Dell, Bernard Simpson, Ira
Simpson, Claude Smith, and

No. 96-1005

Anthony Taylor,
<u>Plaintiff-Appellee,</u>

v.

BLUESTONE COAL CORPORATION,
<u>Defendant-Appellant,</u>

and

JAMES C. JUSTICE, individually,
<u>Defendant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-93-1191-2)

Argued: October 31, 1997

Decided: April 6, 1998

Before WIDENER and ERVIN, Circuit Judges, and
BULLOCK, Chief United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Charles Leslie Woody, SPILMAN, THOMAS & BAT-
TLE, Charleston, West Virginia, for Appellant. Daynus Jividen,
OFFICE OF THE ATTORNEY GENERAL, Charleston, West Vir-
ginia, for Appellee. **ON BRIEF:** Eric W. Iskra, SPILMAN,
THOMAS & BATTLE, Charleston, West Virginia, for Appellant.
William S. Steele, Managing Deputy Attorney General, Amie Lang-
fitt Johnson, Assistant Attorney General, OFFICE OF THE ATTOR-
NEY GENERAL, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal presents the issue of whether, under the circumstances
of this case, West Virginia's Wage Payment and Collection Act (the
"Wage Payment Act"), W. Va. Code §§ 21-5-1 et seq., is pre-empted
by federal labor law. Finding that the district court correctly con-
cluded that the Wage Payment Act was not pre-empted by federal
labor law, we affirm.

Appellee Commissioner of the West Virginia Department of Labor
(the "Commissioner") brought this complaint against Appellant Blue-
stone Coal Corporation ("Bluestone") and James C. Justice[1] in state
court on behalf of twenty-six individuals who were former employees
of BBC Coal Company, Inc. ("BBC"), Thurman Coal Company

_____

[1] Defendant Justice was dismissed from this action by order dated
April 21, 1994. J.A. at 36.

2

("Thurman"), Grayhead Mining Company ("Grayhead"), and C&O Mining Corp. ("C&O").[2] Only the claim brought on behalf of the former employees of C&O is relevant in this appeal. The former employees of C&O allege that C&O owes them wages and fringe benefits and that the Wage Payment Act entitles them to collect those monies from Bluestone in its capacity as a prime contractor within the meaning of the Wage Payment Act.[3]

The facts underlying this dispute are straightforward. During the last six months of their employment, the C&O employees did not receive wages and fringe benefits at the rate required by the 1988 National Bituminous Coal Wage Agreement. Instead, C&O negotiated a separate contract with the employees and paid them at a lower

_____

[2] Bluestone removed this action to federal court on the ground that the Commissioner's claims were subject to complete pre-emption under various sources of federal law including labor law and the Employment Retirement Income Security Act of 1974 ("ERISA"). The Commissioner then moved to remand the action to state court. While the motion to remand was pending, the claims with respect to the former employees of Thurman and Grayhead were settled and dismissed. J.A. at 20, 54. The district court then denied the Commissioner's motion to remand. The district court found that removal was proper as to the entire action because the Commissioner's claim with respect to BBC was subject to complete pre-emption pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. J.A. at 63-71; see 28 U.S.C. § 1441(c); Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California, 463 U.S. 1, 13 (1983); Rosciszewski v. Arete Assocs., Inc., 1 F.3d 225, 229 n.3 (4th Cir. 1993). The district court thereafter granted Bluestone's motion for summary judgment directed at the claim brought on behalf of BBC employees because the claim was pre-empted by Section 301 of the LMRA, and under Section 301 a claim could not be maintained against Bluestone as a non-signatory to the relevant collective bargaining agreement. J.A. at 85-86.

[3] Under the Wage Payment Act, if the employer fails to pay in full the wages of its employees including then accrued fringe benefits, then a "prime contractor" is liable for "payment of wages and fringe benefits . . . to the extent that the employer of such employee fails to pay such wages and fringe benefits." W. Va. Code § 21-5-7. Bluestone does not dispute that it is a prime contractor within the meaning of the Wage Payment Act. See J.A. at 53.

3

rate. J.A. at 78. As a result, unfair labor practice charges were filed against C&O with the National Labor Relations Board (the "NLRB"), which entered a compliance order against C&O for net back pay, fringe benefits, and medical benefits. J.A. at 52, 78. This court upheld enforcement of the NLRB award. Id.

The Commissioner's claim on behalf of the C&O employees arose because C&O failed to pay in full the wages owed pursuant to this NLRB award, apparently because C&O had gone out of business. See Appellee's Br. at 11. In its motion for summary judgment, Bluestone asserted that the Commissioner's claim under the Wage Payment Act on behalf of the C&O employees was pre-empted by federal labor law governing successor liability for unfair labor practices. Bluestone did not cite to authority or identify relevant pre-emption principles supporting this position before the district court. J.A. at 79.

The district court rejected Bluestone's argument. The district court found Section 301 pre-emption did not apply because the rights created by the Wage Payment Act were independent of the collective bargaining agreement and could be resolved without interpretation of the agreement. Because Bluestone conceded that it would be liable for the amounts owing to C&O employees if the Wage Payment Act was not pre-empted, the district court subsequently entered an order granting judgment against Bluestone as to the C&O employees. J.A. at 100.

After the district court denied Bluestone's motion for reconsideration, Bluestone filed a timely appeal to this court. On appeal, Bluestone does not challenge the district court's determination that Section 301 pre-emption is inapplicable in this case. Indeed, Bluestone concedes that Section 301 pre-emption does not apply. See Appellant's Br. at 19. Instead, Bluestone relies on San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959), to argue that the Commissioner's claim is pre-empted because the Wage Payment Act interferes with "the unfair labor practices of C&O Mining and the [NLRB's] compliance rules and regulations dealing with such violations." Appellant's Br. at 23. Thus, under Bluestone's theory, because Section 8 of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 158, provides the NLRB with exclusive jurisdiction to adjudicate unfair labor practice charges, neither the state courts nor the

4

federal courts have jurisdiction to consider whether Bluestone should be liable for C&O's unfair labor practices. Bluestone misunderstands the nature of the Commissioner's claim and the scope of Garmon pre-emption.

Pre-emption by federal law is a question of law subject to de novo review. See Cox v. Shalala, 112 F.3d 151 (4th Cir. 1997). In Garmon, the Supreme Court made two statements which have provided general guidelines for determining the unexpressed intent of Congress regarding the permissible scope of a state's regulation of activity touching upon labor-management relations. As to conduct clearly protected or prohibited by Sections 7 and 8 of the NLRA, the Garmon Court stated:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

359 U.S. at 244. The Garmon Court also made the following, more sweeping statement: "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." Id. at 245.

Relying on these statements, Bluestone argues that West Virginia's Wage Payment Act impermissibly interferes with the NLRB's jurisdiction over C&O's unfair labor practices, and its rules and regulations with respect to compliance, and that, accordingly, federal law has pre-empted the "collection of NLRB awards." Appellant's Br. at 18.

However, Bluestone overlooks the fact that the Supreme Court has refused to apply the Garmon guidelines "in a literal, mechanical fash-

5

ion." Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 188 (1977). Thus, the Supreme Court has held that:

> Under Garmon, a State may regulate conduct that is of only peripheral concern to the Act or that is so deeply rooted in local law that the courts should not assume that Congress intended to pre-empt the application of state law. .. . [In Sears,] we emphasized that a critical inquiry in applying the Garmon rules, where the conduct at issue in the state litigation is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented to the state court is identical with that which could have been presented to the Board .

Belknap, Inc. v. Hale, 463 U.S. 491, 509-10 (1983) (emphasis added).

In view of these principles, Bluestone's reliance on Garmon pre-emption is misplaced. The conduct at issue under the Wage Payment Act is not an issue which is identical to that which could have been presented to the NLRB. The NLRB's inquiry into C&O's unfair labor practices involved an examination of the unilateral dealing done by C&O with its employees and an examination of NLRA Section 8. Federal labor law rules with respect to successor liability, in turn, deal with the circumstances in which liability for a predecessor's unfair labor practices may be imputed to a successor corporation. See, e.g., Golden Gate Bottling Co., Inc. v. NLRB, 414 U.S. 168 (1973).

In contrast, prime contractor liability involves an examination of the relationship between Bluestone and C&O, Bluestone's prime contractor status, and West Virginia's Wage Payment Act. As the district court consistently emphasized, prime contractor liability does not involve any inquiry into whether C&O committed unfair labor practices, or whether Bluestone may be liable for those practices as a successor. See J.A. at 118-19. Thus, prime contractor liability is not an issue which could have been presented to the NLRB and is not an issue with which the NLRB would have been concerned. In short, the Wage Payment Act does not turn on successor liability and in no way interferes with federal labor law rules with respect to successor liability.

6

Moreover, as the Commissioner notes, the Wage Payment Act expresses a policy which is rooted deeply in the local law of West Virginia and consequently is not a law which courts should assume Congress intended to pre-empt under the NLRA. <u>See Mullins v. Venable</u>, 171 W. Va. 92, 297 S.E.2d 866 (1982). For the foregoing reasons, we affirm the district court's decision denying Bluestone's motion for summary judgment and granting judgment in favor of the Commissioner.

<u>AFFIRMED</u>

7