**Jennifer Lynn ROSENKRANS and Mark Hunsinger, Plaintiffs,**

**v.**

**Gehred WETZEL, D.O., Kenneth A. Thompson, Tyler Memorial Hospital Penn State Geisinger Medical Center, Via Life Flight, Penn State Geisinger Health Plan, Penn State Geisinger Medical Group, Defendants.**

**No. 3:CV 00–1511.**

United States District Court, M.D. Pennsylvania.

Jan. 19, 2001.

Joseph P. Lenahan, Lenahan & Dempsey, P.C., Scranton, PA, for Jennifer Lynn Rosenkrans, Mark Hunsinger, Individually, plaintiffs.

James J. Dodd-o, Thomas, Thomas & Hafer, LLP, Harrisburg, PA, James J. Dodd–O, Thomas, Thomas & Hafer, Bethlehem, PA, Mark T. Perry, Law Offices of Mark T. Perry, Frank J. Brier, Perry Law Firm, Scranton, PA, for Kenneth A. Thompson.

Richard K. Hodges, Scranton, PA, Daniel Morgan, Joseph T. Healey, O'Malley & Harris, P.C., Scranton, PA, for Tyler Memorial Hospital.

Patrick T. O'Connell, Geisinger Systems Services, Department of Legal Services, Danville, PA., Penn State Geisinger Medical Center, Via Life Flight, defendant.

Ben Post, Kenwyn M. Dougherty, Philadelphia, PA, for Penn State Geisinger Health Plan, Penn State Geisinger Medical Group, defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I

On July 25, 2000, the Plaintiffs filed a Complaint in this case seeking damages for the death of Hannah June Hunsinger. The Complainants named Penn State Geisinger Health Plan as one of the Defendants, and based their claims for damages on the alleged tortious and negligent conduct of the Defendants, which resulted in the death of Hannah June Hunsinger.

On August 29, 2000 Defendant, Penn State Geisinger Health Plan, removed this action to this Federal Court. In doing so, the Defendant argued that "because Plaintiffs' claims for a delay and a denial of benefits are specifically provided in § 502(a)(1)(B) of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), this action is removable to this court pursuant to the complete preemption exception to the well-pleaded complaint rule." In addition, Defendant alleged that "in Count V(B) of their Complaint, Plaintiffs purport to be bringing their claim against Defendant, Penn State Geisinger Health Plan, not for a denial of care, but rather on the basis of the delivery of poor quality of health care." (See Doc. # 1, Exhibit "A" Paragraph 76).

On November 2, 2000, Plaintiffs filed a motion to remand this case to the State Court arguing that this is a "medical malpractice claim" and that there is no federal issue involved which would require removal to the federal court system. In the motion to remand, Plaintiffs allege that they "did not seek to make any claims in this case on the basis of denial of care, under ERISA, or a breach of fiduciary duty by the health plan." The Plaintiffs further argue that in Paragraph 76 of the Complaint, they allege "the plaintiffs bring their claim against defendant, GHP, not for a denial of care, but rather on the basis of delivery of poor quality health care which was caused by the corporate negligence of this HMO company." (Doc. # 21)

On November 15, 2000 the Defendant filed its Answer in opposition to the Plaintiffs' Motion to Remand. In the Answer to the Motion to Remand, Defendant argued that contrary to the Plaintiffs' assertions, the Plaintiffs do, in fact, assert a claim against the Defendant, Penn State Geisinger Health Plan, arising under the laws of the United States, § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), ... and further, that "Section 514 of ERISA, 29 U.S.C. § 1144(a) preempts all of Plaintiffs' State Law claims against the HMO Defendant". The Defendant further asserted that in "light of the holding of the Supreme Court of the United States in *Pegram, supra.*, Plaintiffs claims against Defendant, Penn State Geisinger Health Plan, may be preempted by the Health Maintenance Organization Act, 42 U.S.C. § 300(e) et seq. (1973)." (Doc. # 23)

We find that the Defendant's concept and argument is factually flawed and thus not legally correct, therefore, we will re-

mand this action to the Court of Common Pleas of Lackawanna County.

## II

■ The concepts of exemption and removal exist to allow actions to be transferred to the federal court system when those actions are obviously based on some federal law or federal legislation. But the Federal Courts have no jurisdiction in matters where State authority has been traditionally recognized and such cases must be remanded to the State Courts unless it is clear that the parties are acting according to specific federal laws or under federal authority. Indeed, *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed. 2nd 695 (1995), instructs that there is "no ERISA preemption without clear manifestation of congressional purpose."

The Defendant proceeded in this removal action under the supposed authority of *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350 (3d Cir.1995) (hereinafter *Dukes* ) and *In re U.S. Healthcare, Inc.*, 193 F.3d 151 (3d Cir.1999) (hereinafter Bauman) and more specifically, the recent case of *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

■ While acknowledging that the Complaint is generally a tort claim, alleging medical malpractice—the Defendant argues that the claim set forth in Section V(B), is one that requires removal because of allegations of the failure of an HMO (Defendant) to live up to terms of a plan covered by ERISA, in that the Defendant HMO allegedly denied the Plaintiff eligibility for benefits.

The Defendant goes on to argue that this type of claim falls squarely within the terms of ERISA and that the Plaintiffs are preempted from bringing such a claim in a State Court.

We find that the Defendant's argument, and particularly, the reliance on *Pegram*, is more hope than practical reality in that it:

1. wrongly classifies the Plaintiffs' Complaint which is a true medical malpractice action and not a fiduciary or denial of benefits claim, and

2. is not supported by the law established in the cases cited.

Review of the Complaint, particularly paragraphs 46 to 76, as cited by the Defendant, belies the Defendant's argument that the Plaintiffs make a claim of denial of a fiduciary duty or denial of care or coverage. This is a straight out medical malpractice claim. In fact, the Plaintiffs in Paragraph 76 claim.

"Plaintiffs bring their claim against the Defendant GHP not for a denial of care, but rather on the basis of delivery of poor quality of health care which was caused by the corporate negligence of this HMO company."

## III

There is often a fine line—as noted in the cases cited—between the acts of denial of coverage and failure to deliver quality care—but the claim in this case is plainly evident from a general reading of the Complaint—as well as specific references in the Complaint to the alleged tortious and negligent acts of the Defendant. We are not without specific guidance in this case, as reference to the *Dukes, Bauman,* and *Pegram* cases, cited herein, repeatedly provide the parameters within which issues like we have before us should be decided.[1]

For instance, we are instructed that to determine whether a claim "arises under" federal law—and thus is removable—we must begin with the "well-pleaded complaint rule".

---

**1.** See also *Kurtinitis v. Bloom, et al.,* No. Civil 98–1148, U.S.D.C. Middle District of PA dated January 31, 2000.

Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if a federal question is presented on the face of the Plaintiff's properly pleaded complaint. We find this doctrine does not apply here as we have pointed out that even a cursory reading of the Plaintiffs' Complaint shows it is totally under State Law and is not Federal Law based.

■ The Supreme Court, as discussed in *Dukes,* has recognized an exception to the well pleaded complaint rule—the "complete preemption" exception under which "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." The complete preemption doctrine—under which the Defendant claims the right of removal in this case—applies when "The preemptive force of 'the federal statutory provision' is so powerful as to displace entirely any State cause of action (addressed by the Federal Statute). Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of (the federal provision)."

■ The Supreme Court has determined that Congress did indeed intend the Complete Preemption Doctrine to apply to state causes of action which fit within the scope of ERISA's civil-enforcement provisions.

This reasoning, however, does not apply to cases based on fact situations such as the one before us because the fact that the Supreme Court has recognized a limited exception to the well-pleaded complaint rule for state law claims which fit within the scope of Section 502 by no means implies that all claims preempted by ERISA are subject to removal. Here, we are directed to a case of the U.S. Court of Appeals for the 6th Circuit, which recently considered the fact that "removal and preemption are two distinct concepts." *Warner v. Ford Motor Company,* 46 F.3d 531 (6th Cir.1995). In *Warner,* the Sixth Circuit held that a Section 514(a) preemption defense will not justify removal unless the claim falls specifically within the scope of ERISA's civil enforcement provisions (Section 502). See also, *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269 (2d Cir.1994), which held that a state law professional malpractice claim against a company hired by plaintiff's employer to provide psychotherapy services, was deemed outside the scope of Section 502(a)(1)(B) and therefore not removable.

■ The law that guides us in considering these cases also instructs that the difference between preemption and complete preemption is very important. When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under Section 514(a), the District Court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. The District Court lacks power to do anything other than to remand the case to the State Court where the preemption can be addressed and resolved. (See *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 4, 103 S.Ct. 2841, 2843, 77 L.Ed.2d 420 (1983)).

In the *Dukes* case, then, where the Defendant proposed arguments similar to what the Defendant proposes in the case we consider here, our Circuit Court found that the Plaintiffs were not claiming that the plans erroneously withheld benefits due, but rather that they were attacking the quality of the benefits they received. The Circuit Court also found that the Plaintiffs in *Dukes* were not asking the State Courts to enforce their rights under the terms of their respective plans or to clarify their rights to benefits. As a result, the Court found the Plaintiffs' claims fell outside the scope of Section 502(a)(1)(B) and that the cases had to be remanded to the State Court.

In *Dukes,* the Appellate Court found that "the Plaintiffs are not attempting to define new 'rights' under the terms of the

plan; instead, they are attempting to assert their already existing rights under the generally applicable state law of agency and tort. But patients enjoy the right to be free from medical malpractice regardless of whether or not their medical care is provided through an ERISA plan."

The Third Circuit Court in *Bauman* found that state law claims directed to the quality of benefits provided are not completely preempted under ERISA, while claims that plans erroneously withheld benefits due or claims seeking to enforce participant's rights under their respective plans or to clarify their rights to future benefits, are subject to complete preemption.

In the course of its opinion in *Bauman*, the Circuit Court pointed out that perhaps the most significant contribution made by *Dukes*, was the distinction drawn between (1) state law claims directed to the quality of benefits provided, which are not completely preempted and (2) claims "that the plans erroneously withheld benefits due" or that seek "to enforce plaintiffs' right under their respective plans or to clarify their rights to future benefits", which are subject to complete preemption.

### IV

As we pointed out herein, all of Defendant's submissions, including the reply memorandum submitted on January 10, 2001, show the Defendant who opposed the motion to remand, relies most heavily on the *Pegram* case. We find that reliance, however, is misplaced and does not justify Defendant's argument.

In *Pegram* the Plaintiff, Herdrich, instituted a lawsuit in State Court for medical malpractice and subsequently added two counts charging state-law fraud. Several of the Defendants responded that ERISA preempted the new counts and removed the case to Federal Court. After certain proceedings in the Federal Court, Plaintiff was allowed to amend the complaint and she did so by alleging that the "provision of medical services under the terms of the Carle HMO Organization rewarding its physician owners for limiting medical care, entailed an inherent or anticipatory breach of an ERISA fiduciary duty."

There was no contest in the *Pegram* case concerning the propriety of the removal of the matter from State to Federal Court and the Supreme Court took no position on whether the case was properly removed.

The question which the Supreme Court addressed in the *Pegram* case was "whether treatment decisions made by a health maintenance organization, acting through its physician employees, are fiduciary acts within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29 U.S.C. §§ 1001, et seq. (1994 Ed. and Supp. III)". The Supreme Court held that such conduct did not amount to "fiduciary acts within the meaning of ERISA."

This is a different question than the one we face in the matter before us. The Complaint in this case is a straightforward medical malpractice action. All of the authorities we have cited herein instruct that such actions are not completely preempted and should be remanded to the State Court.

The Defendant would have us extend some of the commentary in the *Pegram* case and conclude that the commentary indicates the Supreme Court is moving in a direction which would find the preemption doctrine applies to a case such we consider in this opinion. We find no reason to accept the invitation to find within the *Pegram* case any indication of such a directional movement. Rather, we find the *Pegram* is confined to its own particular factual background and it provides us with no authority to accept the Defendant's argument.

### V

Finally, one further matter must be addressed. The Plaintiffs in this case seek

"recovery of costs and counsel fees as they pertain to this Motion to Remand on the basis that the notice of removal filed by the Defendant, GHP, was 'completely without merit and legal foundation.'" (Doc. # 21)

Plaintiffs base their argument for this request essentially on the assertion that ".... the decision of the Supreme Court in *Pegram* cannot be described as a harbinger of a change in position of the Supreme Court on the issue of ERISA preemption, since *Pegram* was decided on June 12, 2000, and a week later, on June 19, 2000, the Supreme Court by unanimous decision refused to grant a writ of certiorari to the Supreme Court of the *Bauman* decision." (Doc. # 27)

The Plaintiffs' argument continues "all of this information was well known to the Defendant, GHP, when it filed the notice to remove this action to Federal Court. The Defendant, GHP, was well aware that *Bauman* did, in fact, represent the law of the Third Circuit on the issue of preemption, and, more importantly, that the Supreme Court, when given the opportunity to make a change in the law, had declined to do so." (Doc. # 27)

Based on that argument, the Plaintiffs contend the Defendant filed their notice to remove in bad faith and suggest this Court should impose on the Defendant an award of counsel fees for the Plaintiffs.

In response to this assertion of bad faith, the Defendants essentially reply "in their reply memorandum of law, Plaintiffs contend that responding Defendants misrepresented the holding in *Pegram v. Herdrich*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164, etc. in their Memorandum of Law in opposition to the motion for remand. This contention is totally unfounded. Nowhere in their Memorandum of Law, did responding Defendant ever mischaracterize the decision of the Supreme Court of the United States in the *Pegram* case. The argument made by responding Defendant relying on the *Pegram* case, was made on the basis of a number of

direct quotes from the Court's opinion.... Nowhere in responding their Memorandum of Law does Defendant attempt to characterize the holding of the Pegram case. Rather, responding Defendant emphasized the Court's recognition of the essential characteristics of HMO's as demonstrated in their opinion." In addition, the Defendants accuse the Plaintiffs of "an absolute misrepresentation" concerning Plaintiffs' argument regarding the denial certiorari in the *Bauman* case. (Doc. # 28)

It is sad to see this ancillary argument, because it distracts from the real issues in this very important case.

We cannot say, on the basis of our review of the record, that either side is acting either in bad faith or engaged in "absolute misrepresentation". Rather, it appears that an ardent attempt to do one's professional work has been discolored by an unnecessary effort to dilute or misinterpret the other side's position.

We will deny the request to award fees on the basis of the assertion of bad faith. But we are constrained to suggest a distinct effort be made to confine the efforts of counsel to those issues which are in the best interests of their respective clients. While diligence and determination deserve applause, civility and restraint are always welcome and often more rewarding.

As a result of the foregoing, the Plaintiffs' Motion to Remand this case to the Common Pleas Court of Lackawanna County will be granted.

### ORDER

NOW, THIS 19th DAY OF JANUARY, 2001, IT IS ORDERED AS FOLLOWS:

1. Plaintiffs' Motion to Remand is granted and this case is hereby returned to the Common Pleas of Lackawanna County for appropriate further action by the Court.

2. Plaintiffs' motion for sanctions is denied.